United States *v.* The Minnesota and North-Western Railroad Company.

———————•———————

THE UNITED STATES OF AMERICA, Appellant, *vs.* THE MINNESOTA AND NORTH-WESTERN RAILROAD COMPANY, Appellees.

The Act of Congress approved June 29th, 1854, granted to the Territory of Minnesota, a present estate in the Lands mentioned in the Act, and Section 4 of the same Act merely qualifies and restrains the power of disposal.

It was competent for the Legislature of the Territory of Minnesota to transf r any interest in Lands which might accrue to the Territory, and the Defendant, by the Act of the Territorial Legislature approved March 4th, 1854, acquired all the rights which vested in the Territory under the first-mentioned Act.

The Act of Congress approved August 4th, 1854, entitled "An Act for the relief of Thomas Bronaugh, and for the Repeal of the 'Act to Aid the Territory of Minnesota in the Construction of a Railroad therein,'" approved the 29th day of June, 1854, is void and of no effect so far as it relates to the Repeal of the Act of June 29th, 1854.

This was an action of trespass commenced in the County of Goodhue, charging the Defendant with entry upon lands of the Plaintiff, on the 12th of October, 1854, and at divers other days and times, and the commission of injuries thereupon to the Plaintiff's damage of one thousand and ten dollars.

The answer admits the commission of the acts complained of, but justifies under the Act of the Territorial Legislature of Minnesota approved March 4th, 1854, by which the Defendant was incorporated and endowed with any lands which Congress might thereafter grant to the Territory for the purpose of aiding in the construction of a Railroad between the points indicated in the Act of Incorporation, and the Act of Congress approved June 29th, 1854, entitled "An Act to aid the Territory of Minnesota in the Construction of a Railroad therein," alleging a free compliance with the provisions of the Act of Incorporation, and that the acts complained of were done in the location of the Road contemplated by the Charter of 4th March, 1854.

The reply alleges, that after the Directors and Officers of the Defendant were elected and entered upon the discharge of their duties, and before the trespasses were committed, to wit, on the 4th day of August, 1854, the Act of Congress of date 29th June, 1854, was repealed by Act of Congress.

To this reply the Defendant demurs, assigning a ground of demurrer that the Act of August 4th, 1854, is void so far as relates to the Repeal of the Act approved June 29th, 1854.

The Court below sustained the demurrer, and the Plaintiff appealed from such decision to this Court.

J. E. WARREN, United States District Attorney, and JOHN B. BRISBIN, for Appellant.

RICE, HOLLINSHEAD & BECKER, for Respondents.

Points of Appellant:

*First.* No title to the lands granted by Congress by the Act of June 29th, 1854, vested in the Territory of Minnesota, or could vest.

*Second.* The Defendant acquired no rights under the Act of

Incorporation and the Act of Congress approved June 29th, 1854.

*Third.* No rights having vested, Congress could resume the grant, and the Repealing Act was valid and effectual.

Points of Respondents :

*First.* By the Act of Congress approved June 29th, 1854, granting certain lands to the Territory of Minnesota to aid said Territory in constructing a railroad, the Territory *eo initanti* upon the passage of the Act, acquired an interest and property in the lands granted, which the Territory could grant and convey.

*Second.* By the Act of the Legislature of Minnesota approved March 4th, 1854, incorporating the Minnesota and North-Western Railroad Company, the said Company acquired an interest and property in all the land subsequently granted by Congress to the Territory for the purposes of the road : which interest became vested in said Company immediately upon the passage of the Act by Congress and the organization of the Company.

*Third.* The second section of the Act of Congress passed August 4th, 1854, repealing the first-mentioned Act of Congress, is repugnant to the Constitution of the United States, and also to great and fundamental principles of the common law.

*By the Court.*—W ELS·, *Chief Justice.* This is an appeal from the judgment of the District Court, for the County of Goodhue.

The United States brought an action of Trespass against the Minnesota and North Western Rail Road Company, for entering upon certain lands of the United States, in the County of Goodhue. The complaint alleges that on a certain day, the Defendants, a body corporate, broke and entered the lands in question, and cut down and carried away certain trees, &c.

The Defendants admit the acts charged in the complaint but set up by way of justification ; *First,* An Act of the Legislature of Minnesota, approved March 4th, 1854, incorporat-

ing said company, and a compliance with its provisions up to the 29th of June, 1854; and .

*Second,* The Act of Congress, approved June 29th, 1854, granting certain lands to the Territory of Minnesota, to aid in the construction of a Railroad, and a subsequent compliance with all the provisions of the act first named.

*Third,* That pursuant to the authority given and rights conferred by these acts, the Defendants on the tenth day of October, located the track of their Railroad, contemplated by the acts in question, upon the *locus in quo,* and that the supposed trespass, was committed by cutting and carrying away, trees upon the track of said road, and in the construction of said road.

The Plaintiff replies that the act of Congress, approved June 29th, 1854, was repealed by the act approved August 4th 1854, entitled " An Act for the relief of Thomas Bronaugh," &c.

To this reply the Defendant demurs, alleging that said act of August 4th, is null and void.

The District Court sustained the demurrer and from this judgment, the appeal in this case is taken.

The first question presenting itself for consideration in deciding this case is, did the Territory of Minnesota acquire any, and if any, what interest in the lands granted by Congress.

This question can best be answered by referring to the act of Congress making the grant.

By referring to this act it appears that the land " is hereby granted to the Territory of Minnesota." It also provides " that the land shall be held by the Territory;" again " the lands hereby granted, shall be subject to the disposal of any Legislature thereof." But again it is provided that " the lands unsold shall revert to the United States." From all this, it appears manifest, if words are to be considered as the representatives of ideas, that by the act of June 29th, 1854, a grant of a present interest in the lands in question was made to the Territory.

It is true that the fourth section of the act provides that the lands hereby granted shall be disposed of only in manner following, that is to say, no title shall rest in the said Territory of Minnesota, nor shall any protest issue until a specified con-

United States *v.* The Minnesota and North-Western Railroad Company.

dition is performed.    But it cannot be possible, that this section was intended to annul the grant of a present interest, which had been clearly made.    The only fair and rational meaning of this section is, that the power of disposal is qualified, as it professes its object to be in the outset.    In other words it provides that no title shall be given by the Territory, not subject to the condition which may divest the estate.

The phraseology of the section is probably not as well chosen as might be desirable; but in my judgment any other construction would be absurd.

The conclusion, therefore, seems to me to be inevitable, that a present estate was granted, subject to be divested, upon a condition subsequent.    This construction gives full effect to the manifest intention of the parties.

The next question arising is whether the Defendants acquired any interest, and if so, what interest under this act of incorporation and the first mentioned act of Congress.

Upon this point, the act of incorporation is clear and explicit. By this act of incorporation it is provided that all such lands as may be afterwards granted to the Territory by Congress to aid in the construction of the Railroad, shall immediately become the property of the Railroad Company, without any further act or deed.    The Railroad Company, therefore, so far as this act can give it, acquired all the right and interest which the Territory had acquired under the act of June 29th.

The Legislature had an undoubted right to transfer any interest which might accrue to the Territory, and it unquestionably has done so.

The third and last question to be considered is : Had Congress the right to revoke the grant, made by the act of June 29th, 1854 ?

If I am right in the conclusions at which I have already arrived, it would, as it seems to me, necessarily follow that Congress had not such a right.

An interest in or right to lands, franchises, &c., once vested cannot be divested by any act of the grantor, unless by agreement of the parties to the grant.

"Every grant of a franchise (says Judge Story) is necessarily exclusive, so far as the grant extends, and cannot be resumed

or interfered with. The Legislature cannot recall its grant nor destroy it. In this respect, the grant of a franchise does not differ from a grant of lands. In each case the particular franchise or particular land is withdrawn from legislative operation, and the subject matter has passed from the hands of the government."

The old rule of law in cases of grants by the king in virtue of his prerogative, was said to be that nothing passed without clear and determinate words, and the grant was construed most strongly against the grantee, though the rule was otherwise as to private grants. This rigid rule had many qualifications and has been materially modified.

If the royal grant was not a mere donation, or bounty, but one founded on a consideration, the stern rule never applied, and the grant was always construed favorable for the grantee, or rather according to its fair meaning, for the grant is a contract. 2 *Kent*, 556.

The grant of lands in this case was made upon a good consideration.

The Act of Revocation is clearly in conflict with the Constitution of the United States. (Amendments to the Const., Art. 5.) Private property can only be taken for public use, and then only upon compensation being given.

Neither can any one be divested of his property but by due course of law, that is, according to the practice of Courts of Justice.

It is held by the Supreme Court of Pennsylvania, 2 *Dall.*, 304, that

" A man can be divested of his property by the Legislature only in three ways :

"*First*, By a stipulation between the Legislature and the owner.

"*Second*, By Commissioners mutually elected by them.

"*Third*, By a jury.

" The Legislature cannot of itself determine the amount of the compensation."

But, independent of the Constitutional provision referred to, the Repealing Act is invalid.

There is a principle inherent in the nature of society, as old

United States *v.* The Minnesota and North-Western Railroad Company.

as civil government itself, which sets bounds to the powers of legislation.   It is the principle which protects the life, liberty and property of the citizen from violation in the unjust exercise of legislative powers.   If the property of an individual may be seized without compensation, our security for life, liberty and property is not as great as we have generally supposed.   A claim to such a right is of a startling character. Chief-Justice MARSHALL says, *Peep vs. Fletcher*, 6 *Cranch*, 87: "If an act be done under a law, a succeeding Legislature cannot undo it.   The past cannot be recalled by the most absolute power."

It is not pretended that one Legislature can, in the legitimate and ordinary course of legislation, bind a succeeding Legislature; but an act not expressly permitted by the Constitution, which impairs or takes away rights vested under pre-existing laws which are in the nature of contracts, is unjust, unauthorized and void.

Such is the rule in all civilized States where the common or the civil law is established.

The government of the United States is one of limited powers.   It is only sovereign in a qualified sense.   Congress can do what the Constitution authorizes it to do, and no more. Certain powers undoubtedly arise by implication, but no power can be implied authorizing the Legislative department to take a man's property without compensation and without due course of law.   This power is not included in any general grant of legislative powers.   A power to do an act which has been regarded as dishonest among individuals from time immemorial in all civilized countries, cannot be implied from any of the powers granted by the Constitution; and, as such a power is not expressly given, it cannot be exercised.