## ROBERT WAGNER v. G. M. SEABERG.[1]

July 20, 1917.

Nos. 20,360—(184).

**Contract — work and labor of adult son — finding sustained by evidence.**

1. The evidence was sufficient to justify the jury in finding that services rendered by a son to his father after he became of age were not rendered gratuitously, but pursuant to an agreement that they should be paid for at the death of the father.

**Same — statute of limitations.**

2. The agreement being that the services should not be paid for until the father's death, the statute of limitations did not begin to run until that event.

**Damages not excessive.**

3. The verdict is not excessive.

**Witness — examination of witness.**

4. There was no prejudicial error in the court taking part in the examination of a witness.

Robert Wagner appealed from a judgment of the probate court for Martin county disallowing his claim for $7,500 against the estate of Peter R. Wagner, deceased, to the district court for that county. The appeal was heard before Quinn, J., and a jury which returned a verdict for $5,088 and answered in the affirmative the question: Was it understood and expected by both Peter Wagner and the appellant Robert Wagner that the appellant Robert Wagner was to be paid for the services which he rendered for his father Peter Wagner after he became 21 years of age?

[1]Reported in 163 N. W. 975.

and fixed the value of the services for the last 6 years of his father's life at $2,880. From an order denying his motion for a new trial, G. M. Seaberg, administrator of the estate, appealed. Affirmed.

*S. P. Hall* and *Haycraft & Palmer,* for appellant.

*Albert R. Allen,* for respondent.

BUNN, J.

Peter R. Wagner, a resident of Martin county, died January 31, 1915. He came to Martin county in 1889 from Illinois, where he had lived for many years, raising a family of six children. His wife had died some time before, and shortly before he came to Minnesota he married again. Robert Wagner, the plaintiff, was the son of his second wife by a former marriage. Robert came to Minnesota with his mother and his stepfather, and was shortly afterwards legally adopted by the latter as his son. Peter's children by his first wife remained in Illinois. Robert became of age in 1901, and continued to work on the farm until his father's death. His mother died in June, 1915. Both died intestate. Robert of course inherited from his mother her share in the farm of her husband, and from his father an equal share with his other children.

Robert filed a claim against his father's estate for $7,500, the alleged value of his services for the 15 years after he became of age. The claim was disallowed by the probate court, and Robert appealed to the district court, where, after a trial to a jury, he recovered a verdict of $5,088. The administrator moved for a new trial, the motion was denied, and this appeal taken.

1. There is no doubt that Robert worked faithfully and well for his father, who was old and incapacitated from work himself. He managed the farm, and cared for his parents, all without compensation, except his living expenses. It is equally undisputed that the children who remained in Illinois did nothing for their father in his illness and old age. Of course all this does not entitle Robert to compensation, unless he proves an agreement by his father to pay for his services. This is elementary. The first claim of defendant on this appeal is that the evidence was insufficient to overcome the presumption that the services were rendered gratuitously. We need but refer to the most recent of the numerous cases in this state bearing on the question. In Lovell v. Beedle, supra, page

12, 163 N. W. 778, it was reiterated that the agreement of a parent to pay for the services of his child may be established by proof of facts and circumstances from which it may be inferred that both parties understood that the services were to be paid for, and it is not necessary that the amount of the compensation should have been fixed. Testing the evidence in this case by the rule stated, we easily reach the conclusion that it was sufficient to overcome the presumption and to justify a recovery by plaintiff. Of course Robert could not testify to conversations with his father, but at least three disinterested witnesses testified to repeated declarations by the father, both in the presence of Robert and when he was not present, to the effect that the latter had worked the farm since he was a small boy, must continue to work it, and would have the farm as compensation on the death of the declarant. We need not give in detail these declarations, but will content ourselves with saying that, considered with the admitted fact that Robert stayed and worked for his parents during the best years of his life, they sufficiently show an understanding that the son should be paid for his services by receiving the farm as his own at his father's death. The evidence to show an agreement by the father to compensate the son for his services is at least as persuasive as it has been in several of the cases decided by this court. The declarations testified to were more than mere passing remarks, showed more than a mere expectation on the part of the father, unexpressed to the son, to pay for the services, and an expectation of the son to receive pay. The father having failed or neglected to give the farm to Robert by deed or will, the latter was not obliged to sue for specific performance, but might do as he did, file a claim against the estate for the reasonable value of his services.

2. The next contention of defendant is that the claim of plaintiff for services during all the years except the last six is barred by the statute of limitations. This would be true if plaintiff's agreement with his father gave him the right to recover for a year's work at the end of the year, or at any time before six years prior to the time the claim was presented. But this was not the agreement or understanding. Plaintiff was to receive his pay on his father's death, and until then had no cause of action. It follows that the statute did not begin to run until Peter Wagner died. In re Hess' Estate, 57 Minn. 282, 59 N. W. 193.

3. It is claimed that the verdict was for an excessive amount. The jury allowed plaintiff something like $360 a year for his services. Considering what these services were, and the evidence as to the value of such services, we find no ground for holding the verdict excessive.

4. The court took a hand in examining a witness, asked leading questions, and elicited answers favorable to plaintiff. This is assigned as error. We are able to see no prejudice, even if we concede that the examination was not proper and that defendant is in a position to raise the question here.

Order affirmed.

Mr. Justice Quinn, having tried the case below, took no part.