## IDA GREENFIELD v. LOUIS PETERSON.[1]

### February 7, 1919.

### No. 21,050.

**Specific performance of contract to make will.**

1. Plaintiff did not assume that peculiar and personal domestic re-

[1] Reported in 170 N. W. 696.

lation to the decedent which is essential to constitute the rendition of personal services a sufficient part performance to entitle her to enforce an oral contract of the decedent to give her his property at his death.

**Same — evidence requisite to prove contract.**

2. The courts are strict in scrutinizing and weighing the evidence offered to establish such a contract, and it must be clear, satisfactory and convincing.

**Same — finding supported by evidence.**

3. The finding of the trial court that the decedent did not make the contract alleged is justified by the evidence.

Action in the district court for Murray county against the executor of the estate of Nels Gummeson, to enforce specific performance of an oral contract by testator to make his will in favor of plaintiff. The answer was a general denial. The case was tried before Nelson, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Tom Davis* and *Ernest A. Michel,* for appellant.
*James H. Hall* and *Adolph E. L. Johnson,* for respondent.

TAYLOR, C.

Plaintiff brought this action to enforce specific performance of an oral contract alleged to have been made by Nels Gummeson, in 1906, by which he agreed to give her, at his death, all his property except two specified items. He died in 1915, leaving a will which revoked all prior wills and made no provision for plaintiff. The trial court found as a fact that, although Nels Gummeson had stated, in 1906, that he intended to will some of his property to plaintiff, he had never made any contract to do so, and rendered judgment for defendant. Plaintiff appealed.

Nels Gummeson and his wife, Christine Gummeson, were natives of Sweden. They settled on a farm in Murray county in this state many years ago and seem to have been in comfortable circumstances. As early as 1898 they relieved themselves from farm work by renting the farm, but reserved to themselves certain rooms in the farmhouse in which they continued to reside. They had no children. Nels Gummeson had

no relatives in this country and no near relatives living. The plaintiff, Ida Greenfield, is the daughter of a sister of Christine Gummeson. The plaintiff married Tollef Greenfield in 1890. In 1893, Tollef became financially embarrassed and sold a farm which he then owned to Nels Gummeson, accepting in part payment therefor $1,400 in promissory notes held by Gummeson against third parties. There was a financial panic in 1893 and Tollef realized only about $1,000 on these notes over and above the expense of collecting them. In 1904, Tollef purchased another farm, about three miles by road from the Gummeson farm, on which he and his family have resided ever since. Plaintiff testified in effect that, from the time she took up her residence on this farm until the Gummesons returned to Sweden in 1908, she visited them two or three times a week, frequently taking them cakes and other delicacies, and that on these visits she performed household work for Mrs. Gummeson and also read to her at times from religious books.

Plaintiff claims that the contract in question was made during one of these visits in the fall of 1906. Those present at the time were Mr. and Mrs. Gummeson and plaintiff and her husband. As Mr. and Mrs. Gummeson are both dead and the statute bars plaintiff from testifying to this conversation, the only evidence we have as to what took place is the testimony of plaintiff's husband, Tollef Greenfield. He testified that Nels Gummeson said to her: "I don't feel right about this farm that I bought of you and Tollef, and we are getting old and need some one to look after us and help us. You have been good to us these years and you got nothing for it and we want to see that you have pay, or do something for you. Now if you want to forgive me for this, if you want to forget that farm and forgive me and help Christine and myself and look after us and be like a child to us, we will give you what we have when we die, except I want to let John and Marie have the use of the south forty as long as they live, and I want to give Blenda $500 when we die, and I want to give you $500 cash and everything else when we die. We will go down and make out papers in a few days and so you don't need to worry. You have been good to us all these years and have gotten nothing for it and we are going to fix it so you will be paid." He further testified: "Ida said she would do her best to help them and Mrs. Gummeson said that is the way she wanted it."

A few days after this conversation, and on October 2, 1906, Mr. and Mrs. Gummeson and plaintiff and her husband went to Ruthton where Mr. and Mrs. Gummeson jointly executed three wills similar in form except as to beneficiary and property. These three wills were all executed at the same time and each contained a declaration that it was the last will and testament of Nels Gummeson and Christine Gummeson, husband and wife. In none of them did either spouse make any provision for the other. One will gave a specifically described 40-acre tract of land and $500 in cash to plaintiff; another gave $500 in cash to Blenda Olson; and the other gave a specifically described 40-acre tract of land to John Larson and Marie Larson, his wife, for the term of their lives, and to plaintiff after the death of the Larsons. None of the wills disposed of any property except that above mentioned.

After the transactions, the relations between the parties continued the same as before with no substantial change until 1908. In the spring of 1908, Christine Gummeson returned to Sweden, where she remained until her death in 1912. In the fall of 1908, Nels Gummeson also returned to Sweden, where he remained until his death in 1915. Plaintiff never saw either of them after they returned to Sweden and of course performed no services for them after their removal. Before leaving his farm, and on October 5, 1908, Nels Gummeson executed a will which has been duly admitted to probate in Murray county, and which in express terms revoked all prior wills. This will made no mention of plaintiff. Basing her claim on the facts and evidence above outlined, plaintiff insists that she is entitled to all the property, other than the excepted items, which Nels Gummeson possessed at the time of his death.

Defendant presented testimony, principally that of the tenants who lived in the same house with the Gummesons, tending to show that plaintiff merely made friendly visits to the Gummesons and did not perform services for them of any importance. It appears from the testimony of plaintiff and her husband that in 1906 she had six children ranging in age from two to fifteen years; that she cared for these children, did her own housework, and also assisted her husband in the farm work. The Gummesons had ceased operating their farm, had only themselves to care for and were able to hire help if needed. It seems unlikely that plaintiff, burdened with the multifarious duties of her own home, could

have had much time to devote to the Gummesons, or much occasion to assist them. But taking plaintiff's own statement of the amount and character of the services rendered, they are not sufficient to justify a court in enforcing specific performance of the alleged contract. She made no change in her situation on account of the contract. She always resided in her own home with her husband and children and devoted herself to the duties of her own household. She never became an inmate of the Gummeson home and never assumed that peculiar and personal domestic relation to the Gummesons as a member of their family and household which is the essential element of such a part performance as will save the contract from being barred by the statute. Stellmacher v. Bruder, 89 Minn. 507, 95 N. W. 324, 99 Am. St. 609; Richardson v. Richardson, 114 Minn. 12, 130 N. W. 4; Haubrich v. Haubrich, 118 Minn. 394, 136 N. W. 1025; Chapel v. Chapel, 132 Minn. 86, 155 N. W. 1054. For the reason that there has been no such part performance on plaintiff's part as would warrant a court in decreeing specific performance on the part of Nels Gummeson or his representatives, plaintiff could not recover, even granting that the contract had been made as claimed; but the trial court found that no contract had been made, and we find no sufficient ground for disturbing this finding. The courts are strict in scrutinizing and weighing the evidence offered to establish such a contract, and it must be clear, satisfactory and convincing. Newton v. Newton, 46 Minn. 33, 48 N. W. 450; Stellmacher v. Bruder, 89 Minn. 507, 95 N. W. 324, 99 Am. St. 609; Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 Am. St. 420; Richardson v. Richardson, 114 Minn. 12, 130 N. W. 4; Haubrich v. Haubrich, 118 Minn. 394, 136 N. W. 1025; Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455; Brasch v. Reeves, 124 Minn. 114, 144 N. W. 744; Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812. The evidence relied upon to prove the contract in question is the testimony of plaintiff's husband, Tollef Greenfield. It is beyond the power of defendant to contradict this testimony as Nels Gummeson and Christine Gummeson are both dead. But where the proof of such a contract consists in the testimony of a witness, having the interest in the outcome naturally possessed by the spouse of the claimant, and the adverse parties are no longer living to dispute him, the court is not bound to accept such testimony, although

uncontradicted, as sufficient to establish the contract, unless it is corroborated in such manner as to convince the court of its correctness. The testimony is that Nels Gummeson promised to give plaintiff all his property except $500 in money and a life estate in 40 acres of land; but the wills, executed in the presence of both parties for the purpose of carrying the promise into effect, did not give plaintiff all the property save the two excepted items, but only gave her $500 in money, 40 acres of land and the remainder, subject to an estate for two lives, in another 40 acres of land. The acts of Nels Gummeson indicate that he did not consider his promise as broad and sweeping as the statement attributed to him would imply. His statement as given above evinced an intention to make a provision for plaintiff at his death; but whether this statement taken as a whole and plaintiff's reply that she "would do her best to help them" are sufficient to carry the transaction beyond an arrangement for a gift and establish a contract is doubtful. To constitute a contract the terms of the contract must be definite and certain. What duties and obligations plaintiff assumed and undertook to perform is far from clear. The subsequent acts of the parties indicate that neither understood that there was to be any substantial change in their relations or conduct toward each other. The most that can be said is that the evidence made a question of fact for the trial court.

Judgment affirmed.