## LULU LARSON v. ALFRED LARSON.
## BESSIE LARSON v. ALFRED E. LARSON.[1]

December 19, 1924.

Nos. 24,286, 24,287.

**Evidence sufficient to overcome presumption that services to parent were gratuitous.**

1. In this, a proceeding to recover for services rendered by claimants in the care and nurture of their father, during his last illness, evidence examined and *held* to be sufficient to overcome the presumption that such services were rendered gratuitously.

[1]Reported in 201 N. W. 420.

**Proof of parent's agreement to pay child.**

     2. An agreement of a parent to pay for the services of his child may be established by proof of facts and circumstances from which it may be inferred that both parties understood that the services were to be paid for.

Lulu Larson and Bessie Larson filed claims in the probate court for Hennepin county against the estate of their father. From an order of that court allowing the claims, Alfred E. Larson appealed in each case to the district court for that county where the appeals were heard together by Guilford, J., and a jury which returned verdicts for $6,650. From an order denying his motion for a new trial provided plaintiffs consented to a reduction of the verdicts to $5,080.95, defendant appealed. Affirmed.

*Alva R. Hunt,* for appellant.

*Ueland & Ueland,* for respondents.

QUINN, J.

Nels H. Larson died intestate, in Hennepin county, on June 17, 1922, at the age of 76. He left, surviving him, his wife and four children, Alfred E., Henry, Lulu and Bessie Larson. He left an estate, valued at $53,000, with no indebtedness except the claim of the claimants herein. The mother died the following year, at the age of 85. The daughters each filed a claim against their father's estate for wages claimed to be owing to them from January 2, 1917, to June 17, 1922, a period of 283 weeks, also for $300 each for money claimed to be furnished to the parents for their support during that time. The claims were allowed in probate court. An appeal was taken to the district court by Alfred E., where a trial was had and a verdict returned in favor of the claimants in the sum of $6,650. The appellant moved for a new trial, which was granted, unless claimants filed their consent to a reduction of the verdicts of $1,570.05 each, in which event the motion was denied. The consents were filed and this appeal followed.

The decisive question presented by this appeal is whether the proofs are sufficient to sustain a finding that respondents, as cred-

itors of decedent, are entitled to recover from his estate for services rendered in caring for him during the time mentioned. In other words, was the evidence sufficient to overcome the presumption that the services were gratuitous?

Prior to the year 1911, decedent resided with his family on his farm in Meeker county. During that year he rented the farm to his son, Alfred E., and moved to Grove City to live. About a year later he suffered a stroke which greatly impaired his health. Prior to his moving to Grove City, his daughters procured positions and went to do for themselves, each receiving wages something like $20 per week. The parents lived alone at Grove City. The girls induced them to move to Minneapolis and rented a house for them at that place. They moved to Minneapolis in January, 1917, residing in the rented house with the daughters who gave up their positions and devoted their time to the care of their parents. In May, 1917, the father purchased a small home in Minneapolis where he thereafter resided. When he moved to Minneapolis he rented the farm to Alfred at an agreed rental of $1,000 per year, plus the taxes. He also received $15 per month as rental for the Grove City property which he owned, and had some money in a bank.

Decedent was a very heavy man, weighing about 250 pounds. After he suffered the stroke, he was helpless and had to be fed with a spoon, was partially paralyzed so as to require the greatest of care. The mother was a small, frail person, weighing about 107 pounds. The girls had saved up about $300 each from their wages, which they used in buying furniture for the home and other articles needed in the family. They remained with the parents during the remainder of their lives. They did all the work about the premises, including the care of the furnace, storm and screen windows, and the care of their garden and lot. The father was helpless, hard to get along with, and very heavy to handle during all the time he lived in Minneapolis. The daughters gave their undivided attention and services to the care of their parents. The attending physician testified that the father's condition was such that they could not have kept a nurse and that, if they could, it would have required two to have cared for him.

Claimants gave testimony that, in rendering the services which they did to the care of their parents during the time in question, they expected compensation therefor. While it is urged that this testimony should not have been received, we are of the opinion that it was competent. Wigmore, Ev. § 581.

Carrie Rosenquist was called as a witness by the respondents. She testified that she had known claimants for about 12 years; that, during the summer of 1917, witness and her husband were at the Larson home; that Mr. Larson, his wife and the girls were all present, sitting on the sun-porch; that the father was complaining about his condition, and that her husband said to him: "You ought to be thankful you have two such girls and such good care. It would be different if you had to hire" help; that the old gentleman said the girls should be paid for the work; that he did not want them to work for nothing; that Bessie and Lulu were present and heard the talk.

There was other competent evidence, bearing upon the question whether the father expected to pay for such services and whether the claimants expected pay therefor, sufficient to warrant a finding that the services were not intended to be gratuitous by any of the parties, and that claimants were to receive pay therefor.

It is also contended that there is not sufficient evidence in the record to warrant a finding in favor of the claimants for the money advanced by them, as stated. We think the testimony ample to sustain the findings of the jury in these respects. The trial court was well within the proofs in cutting the verdict as it did, and, as so reduced and accepted by claimants, the verdicts are amply justified by the evidence.

Affirmed.