IN RE ESTATE OF JOHN HAVENMAIER, JR., DECEASED, EMMA HAVENMAIER v. FRED RENGSTORF.[1]

May 8, 1925.

No. 24,683.

**Daughter's claim for compensation for services to her father sustained.**

1. Respondent's claim for compensation for services rendered her deceased father, being supported by proof not only of the rendition of the service but of the father's promise to pay therefor, is well sustained by the evidence.

**No family settlement shown.**

2. There is proof that the father divided a sum of money between his children, including respondent. There was no family fund or property then in controversy. In consequence there is nothing to sustain the argument that the transaction amounted to a family settlement barring a recovery by respondent for the services in question.

[1]Reported in 203 N. W. 958.

**Verdict sustained as against attack.**

3. The attack upon the verdict as being of the quotient variety fails because there is no showing that, in advance of the computation made by the jurors to ascertain the average of sums suggested one by each of them, there was an agreement to be bound by the result.

**Verdict sustained as to amount.**

4. Under the evidence as to the character and value of respondent's services, the verdict, as to amount, cannot be interfered with here.

1. See Executors and Administrators, 24 C. J. p. 407, § 1123.
2. See Compromise and Settlement, 12 C. J. p. 324, § 16.
3. See New Trial, 29 Cyc. p. 812; Trial, 38 Cyc. p. 1844.
4. See Executors and Administrators, 24 C. J. p. 414, § 1142.

---

1. See note in 11 L. R. A. (N. S.) 879, et seq. 11 R. C. L. p. 209; 2 R. C. L. Supp. p. 1222; 4 R. C. L. Supp. p. 703, 5 R. C. L. Supp. p. 602.
3. See 20 R. C. L. p. 243; 3 R. C. L. Supp. p. 1048; 4 R. C. L. Supp. pp. 1347, 1348; 5 R. C. L. Supp. p. 1092.

Emma Havenmaier filed her claim against her father's estate for $6,500, for services rendered him, in the probate court for Nicollet county. The claim was disallowed and she appealed to the district court for that county where the appeal was heard by Gislason, J., and a jury which returned a verdict in her favor. The administrator appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Mueller & Erickson*, for appellant.

*T. O. Streissguth*, for respondent.

STONE, J.

The respondent, Emma Havenmaier, is the daughter of John Havenmaier, the deceased. Against his estate she filed a claim in the probate court for compensation for personal services rendered her father. The claim was disallowed, but upon appeal to the district court there was a verdict in her favor for $4,662.50. The administrator appeals from the order denying his motion for judgment or a new trial.

1. The first point for appellant is that there was no evidence of the contract without which there could be no liability. The presumption is against the contract and that under such circumstances the services of child to parent are rendered because of and in consideration of the family relationship and not of any contract. But there may well be a contract and if there is, it will be enforced whether expressed in spoken or written words or by the conduct of the parties. In the latter case it is sometimes called an implied contract—although expressed by the actions of the parties and the circumstances of the transaction. It is nevertheless an actual or true contract.

The performance of services, valuable in nature, extended in duration and faithful in rendition, is admitted, and we have been unable to find any basis for the argument that proof of contract is so far lacking as to make necessary a directed judgment against respondent. A sister testifying for her said that their father "had promised" respondent that "he was going to pay her and make it right with her sometime." Another witness said that the decedent had told her that respondent was to "get extra pay." There is other evidence to the same effect and much corroborating testimony of declarations by decedent of his intention to pay respondent, as distinguished from an admission of any actual promise to pay, the latter being the essential thing.

In that state of the record, the evidence referred to, believed as it was, is satisfactory and convincing proof of the contract necessary to recovery. The case on that point is so clear that citation of authority is unnecessary, but among more recent cases may be noted Larson v. Larson, 161 Minn. 289, 201 N. W. 420. On the controlling point, In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424, was very different, for the record there was "absolutely barren" of proof of the contract necessary to a recovery. In Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696, there was a finding of no contract. In contrast, see Lovell v. Beedle, 138 Minn. 12, 163 N. W. 778, where the proof of contract was seemingly of the same general nature as that now before us, and no more convincing. There was evidence of a promise to pay and the recovery was sustained, although the amount was reduced.

2. We have given due attention to the argument that there was a family settlement participated in by respondent, her father and her brothers and sisters, of such a nature as to bar recovery by her. All that happened upon the occasion in question was that the father divided a sum of money among his children, respondent getting a $700 note for her share. There was no family settlement, for there was no controversy concerning a family fund or property which could have been at the time the subject of a family settlement. See Peterson v. Hegna, 158 Minn. 289 (295), 197 N. W. 484. It was assumed below that the evidence did make a question as to whether there had been a settlement between respondent and the deceased. On that precise point, the evidence was conflicting at least and the resulting issue of fact resolved in respondent's favor by the verdict.

3. Going now to the argument that the verdict is of the quotient variety and so far the result of jury misconduct that it should be set aside, we are met first by a condition of the record which we cannot pass without comment. The motion for a new trial, so far as this attack upon the verdict is concerned, was based upon conflicting affidavits. Candor and the clear intent of section 2 of Rule 8 alike require that the printed record contain all the matter necessary "clearly and fully (to) present the questions arising on the appeal." The record here contains only the affidavits attacking, and is silent as to the apparently weighty ones in opposition and supporting the verdict. The brief is likewise noticeably silent concerning them. The purport of the omitted affidavits is that, although the average of the "figures" of the jurors was taken in the manner claimed, there was no agreement in advance to be bound by the resulting quotient. Those affidavits, made by several of the jurors themselves, if considered by the trial judge (and there is nothing in the record to show that they were not considered), would be a sufficient basis for ignoring the charge of misconduct of the jury. In justice to counsel for appellant, it should be stated that his understanding seems to have been that the affidavits omitted from the record were not considered below; hence his failure to print them.

Although, for the reason just stated, we would be justified in declining to consider appellant's argument on this point, we dispose

of it on the merits by saying that, although the showing is that the verdict is the average of 12 sums tentatively suggested one by each of the jurors, there is no showing that in advance of their computation they agreed to be bound by the result. In the absence of such a showing, the verdict on this point was properly sustained. St. Martin v. Desnoyer, 1 Minn. 131 (156); Larson v. Wisconsin Ry. Light & Power Co. 138 Minn. 158, 164 N. W. 666; 20 R. C. L. 244; 29 Cyc. 812.

4. There is too much of fact in respondent's favor to permit interference with the judgment of the jury as to the amount due her. At the time of the trial she was 32 years old. There is evidence indicating that when she was about 18 she was dissuaded from leaving home to attend a commercial college; and that again when she was 21 she gave up her plans to become a telephone operator.

Her parents lived on a farm and through many years respondent appears to have done much more than her share of the farm work. Her mother died in 1920 and had been bedridden since sometime in 1917, so afflicted with cancer as to make the task of caring for her a most disagreeable and onerous one. Respondent was her principal nurse, doing most of the housework as well. After her mother's passing and until the accidental death of her father on April 4, 1923, she continued as his housekeeper. The jury would have been warranted in believing not only that respondent was the faithful and efficient nurse during her mother's long last illness but that in addition she was at times a farm and household drudge. There is persuasive opinion evidence, some from the family physician, of an actual money value of respondent's services which more than justifies the amount of the verdict.

Here, it is only fair to indulge the thought that, if her father's life had not been terminated so suddenly, he would have provided for respondent generously as so much evidence indicates was his intention.

Affirmed.