MARY K. NEUTGENS v. IDA REHMANN AND OTHERS.[1]

March 18, 1927.

No. 25,888.

**Evidence sustained verdict that daughter's services to her mother were under an agreement for compensation.**

The evidence sustains the verdict of the jury finding that services rendered by the plaintiff for her mother for a number of years prior to her death were under a contract whereby she was to have compensation.

Executors and Administrators, 24 C. J. p. 282 n. 91; p. 284 n. 14, 15; p. 285 n. 17.

Certain heirs of the decedent appealed to the district court for Carver county from an order of the probate court allowing plaintiff's claim for services rendered her mother, Anna Neutgens, deceased. On appeal to the district court the case was tried before Tifft, J., and a jury, which returned a verdict for the plaintiff. The heirs appealed from the order denying their motion for a new trial The administrator did not join in the appeal, and the heirs served the notice of appeal upon him. Affirmed.

*George F. Sullivan,* for appellants.

*P. W. Morrison,* for respondent.

DIBELL, J.

The plaintiff, Mary K. Neutgens, presented her claim for services in the care of her mother, Anna Neutgens, deceased, to the probate court of Carver county, and it was allowed in the sum of $3,360. Certain of the heirs appealed to the district court. Issues were framed and on trial before a jury there was a verdict for the plaintiff for $3,000. Certain of the heirs appeal from the order denying their motion for a new trial. The administrator is made a party to their appeal.

[1]Reported in 212 N. W. 943.

Anna Neutgens died in Chaska, Carver county, on November 9, 1924. She had been a widow for 15 years. She had ten children living. In 1912 her daughter, the plaintiff, commenced caring for her and continued doing so until her death on November 9, 1924, with the exception of a short period.

To justify a recovery for her services there must have been a contract between the plaintiff and her mother that she was to have compensation. The contract may be proved circumstantially. It may be implied in fact. The presumption is that when a child remains in the family as a member of it after becoming of age, doing the usual services, compensation is not intended. These principles have been announced over and over. Knight v. Martin, 124 Minn. 191, 144 N. W. 941; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015; Wagner v. Seaberg, 138 Minn. 37, 163 N. W. 975; Lansing v. Gregory, 128 Minn. 496, 151 N. W. 277; In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; Larson v. Larson, 161 Minn. 289, 201 N. W. 420; In re Estate of Havenmaier, 163 Minn. 218, 203 N. W. 958; In re Estate of Johnson, supra, page 451.

The presumption mentioned is not at all controlling nor particularly forceful under the evidence before us. The plaintiff was of age and had been working in St. Paul for two years or more prior to 1912, when she went to her mother's home in Chaska. From then on she was with her mother except for a short period. For a time one of her sisters lived at home, but worked in the post office. Later she married, and for nine years prior to her mother's death the plaintiff had the sole care of her. The mother suffered a paralytic stroke soon after 1912, was unable to speak, and in her later years was substantially helpless.

Naturally enough the evidence of an understanding on the part of the mother that the plaintiff was to have pay is indefinite. There is evidence that she wanted her daughter with her from 1912 on. There is evidence that at that time she indicated that there was enough for both of them, and that a few years later she expressed her understanding, as definitely as one in her condition could, that the plaintiff was to have pay when she was gone. Another daughter interpreted her expressions and ejaculations to mean this. It may

be true, indeed, that both mother and daughter had misgivings about the sufficiency of the mother's property to pay the daughter, and that thus far there was an element of contingency.

In 1916 a guardian was appointed for Mrs. Neutgens. Under an agreement with him the plaintiff was to receive $5 per month, and eventually received that sum. There were several guardianships. The income of the mother's estate was apparently small and uncertain. During the period of the guardianship the plaintiff advanced $167 for her mother's support, and was subsequently repaid. The contract with the guardian does not necessarily or as a matter of law negative a contract with the mother, though it was proper for consideration in determining whether there was a contract. It was but a pittance coming from the income of the estate and did not prevent an understanding of the mother and the daughter that the latter should have actual compensation at the end.

The evidence shows that for twelve years the plaintiff gave faithful care to her mother, and for the last nine years had the exclusive burden of her care. The other daughters, six of them, had homes of their own and were away. The plaintiff never married. The services were needful and efficient and during later years disagreeable of performance. The evidence, necessarily scant, is such as to justify the jury in drawing the inference that the plaintiff expected pay and that her mother expected that she should have pay. The jury so finding, there was a contract. The law applicable to the facts was presented to the jury in a charge to which no exception was taken.

Order affirmed.