## IN RE ESTATE OF JOSEPH H. EMPENGER.
## ANNA M. EMPENGER v. JOSEPH S. EMPENGER.[1]

No. 30,204.

April 5, 1935.

[1]Reported in 259 N. W. 795, 261 N. W. 185.

*Joseph C. Vesely, Joseph A. Hosp,* and *Jesse Van Valkenburg,* for appellant.

*Child & Child,* for respondent.

HOLT, JUSTICE.

The administrator appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

The claimant, daughter-in-law of the deceased, filed a claim against his estate for services rendered him from 1907 up to the

time of his death, July 28, 1930. It was disallowed by the probate court. On appeal issues were framed, and the trial resulted in a verdict in favor of the claimant for $6,500 and interest from July 28, 1930. For an understanding of the legal propositions upon which the decision on this appeal rests, this outline of the record must suffice.

Claimant married Edward E., a son of the deceased, in 1903. The deceased for many years prior to 1903 owned a 60-acre farm a mile west of Hopkins. It bordered on Shady Oak Lake on the south and the Excelsior Road on the north. In January, 1907, his wife died. A short time before, deceased had deeded his son Edward two acres of the homestead, upon which Edward had built a modest home. After the death of his wife and the departure for the west of three of the children, deceased felt lonely and desired to retire from active farming, being then past 60 years. He sold his team and cows. He wanted his son Edward and the claimant to come and live with him. About this time his son Joseph S., now the administrator, married and bought Edward's home, and thereupon Edward and his family moved to the old homestead. In 1917 and 1918 the deceased underwent operations at different times for appendicitis, hemorrhoids, enlarged prostate, and stone in the bladder. About the same time or earlier diabetes had made its appearance, and on that account the deceased restricted his diet. There is some evidence of an accident or a slight stroke that for a short period affected his left arm in 1926. The last two years of his life he ceased going to church because of inability to remain during the whole service. There is evidence that he provided himself with fruit and rye bread when at home; otherwise he partook of the usual food of the family, except that he desired oatmeal at every meal and seldom ate potatoes. He maintained his erect bearing and his weight of about 180 pounds almost up to the year of death. He frequently went fishing summer and winter up to 1926. A daughter, Mrs. Plehal, lived five miles west of the homestead on a farm near Eden Prairie. She and her children testified that he came there nearly every week and up to 1928 spent half of his time there. That he spent half the time at Mrs. Plehal's is disputed by

claimant's testimony. But she admits that deceased frequently visited there and stayed there nights. The claimant testified that her services for deceased were worth $15 a month up to 1918 and $50 a month thereafter. She claims the services were so much more arduous after the operation for the reason that deceased had lost control of his bladder and bowel movements. She is corroborated by her children and some others. She is disputed by the doctor who attended him the last years of his life and by Mrs. Plehal and others.

The administrator alleged that the claimant was the wife of Edward, the son of the deceased; that the deceased and Edward entered into an agreement under which the deceased furnished Edward, the claimant, and their family with the use of the farm and dwelling and the proceeds from the operation thereof and Edward was to till the same, pay the taxes thereon, and to furnish deceased with food and fuel and furnish the claimant as housekeeper for the family, of which deceased should be a member. It is also averred that the services so performed by the claimant were purely domestic in character and such as her husband had agreed to furnish the deceased with.

It is apparent that it is very difficult satisfactorily to establish a claim of this nature against this estate. One would naturally expect that any agreement concerning living together as one family would have been made between the deceased and his son. It is hard to conceive of two contracts, one between the father and son, and the other between the father and the son's wife. The son, his wife, and children were to have the use of the farm and buildings, and the father, the owner, was to share therein as a member of one family. The son was merely to pay the taxes and maintain the property. It would seem unreasonable that the father would, in addition to this favorable bargain with the son, also make an agreement with the son's wife to pay her out of his estate for the reasonable value of preparing his food, doing his laundry, caring for his room, and giving the needed attention when ill. That there was some arrangement between the father and the son with respect to the use of the home and land must be conceded. All ate at the same table. The claimant does not say that she supplied the food

except as it came from a flock of chickens which she owned. The bulk of the supplies of the household came from Edward. He worked the land. He procured the fuel. He kept and took care of a cow for the family's need. The father helped some when he felt like it. He did the same for the Plehals. It was also in evidence that the father held two notes made to him by Edward, one in 1912 and one in 1913, each in an amount exceeding $1,000 and one note made by Edward in 1924 to one Bren for $500, which had been indorsed to the deceased. These notes were found in deceased's safe deposit box. They were all outlawed.

The administrator assigns as error the refusal to give this instruction:

"The services of a wife with respect to the family household belong to her husband; he may waive his right thereto and consent that she receive compensation therefor from another party, provided such arrangement is made in good faith and the rights of creditors are not affected, and there is no question of set-off or counterclaim; but where such set-off or counterclaim exists against the husband, then it must appear that the party to be charged for the compensation for the services had knowledge of such arrangement and assented to and acquiesced therein."

Under the situation above outlined we think it was reversible error to refuse to give the instruction requested or one of equivalent meaning. It may be said that if deceased made this agreement to pay the claimant for her work for him, it is immaterial whether her husband assented to her receiving the pay therefor. But in this case the claimant relies entirely upon surrounding facts and circumstances to prove a contract at all. It is therefore important to consider those facts and circumstances in the light of applicable principles of law. The instruction requested, in our opinion, is correct and applicable. Riley v. Mitchell, 36 Minn. 3, 29 N. W. 588; Bodkin v. Kerr, 97 Minn. 301, 107 N. W. 137; Mason v. Dunbar, 43 Mich. 407, 5 N. W. 432, 38 Am. R. 201; 30 C. J. pp. 520 and 521.

Error is assigned upon rulings excluding offered proof that a few years before death the deceased stated to different witnesses: "I

would like to make a will, but I can't leave anything to Ed because of what he owes me, and I wouldn't want to leave anything to his wife, Anna." In a case of this sort where, because of the death of the one against whom the claim is made, the statute, 2 Mason Minn. St. 1927, § 9817, closes the mouth of the claimant as well as of every heir, it is desirable and needful that the court be liberal in receiving evidence of collateral matters tending to prove or disprove the alleged contract upon which the claim is based. But the rule is firmly established that admissions against interest by the deceased are admissible and that self-serving statements are not. However, in this case the claimant saw fit to call the claimant's daughter, who was present and heard a conversation between her mother and deceased in 1929, when a strip of land had been sold by him to the adjacent church for cemetery purposes, to the displeasure of the family. She testified that deceased said to her mother: "You know I always said this place was for you when I am gone; then you can move the house further east." The claimant also introduced evidence that no will was found. In that situation it seems to us that the offered proof was not a self-serving declaration intended to combat an admission against interest. The proof that claimant introduced tended to show that instead of there being an agreement to pay the reasonable value of her work for deceased there was a contract to will her his property. If such were the contract, it is clear that the proof thereof was insufficient under the authorities cited below in actions for a specific performance. This evidence so introduced was upon a collateral matter, and we are inclined to the view that the proof offered by the administrator was admissible to controvert that received which was not an admission against interest on the issue litigated.

The deeds were properly received. It showed the circumstances under which the deceased, the claimant, and her husband carried on, and might serve to indicate the probability or improbability of the existence of any such contract as here claimed. But there was no purpose in receiving in evidence some diaries kept by the deceased, and the fact that certain others were destroyed by the husband of the claimant. No entry in those received purports to bear on any issue litigated.

Counsel for the administrator relies on cases involving specific performance of a contract to will real property, where it is held that proof of the contract must be by more than a mere preponderance of the evidence. Examples of such are Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696; Hinkle v. Berg, 156 Minn. 307, 194 N. W. 637; Sheehan v. Nelson, 168 Minn. 426, 210 N. W. 284, and cases therein cited. The annotations in 69 A. L. R. 14-219, are of cases of the same character. In the instant case, where the claim is based on an alleged agreement to pay for services, which without such agreement would be presumed to have been rendered gratuitously by one member of a family to another such member, the proof is not required to be of such conclusive character as in the cases just cited. While in all cases like the one at bar the evidence should be closely scrutinized, it is the established rule in this state that a fair preponderance of the evidence warrants a recovery. Neutgens v. Rehmann, 170 Minn. 499, 212 N. W. 943, and cases therein cited. The distinction between the two classes of cases is referred to in Smith v. Hansen, 174 Minn. 272, 219 N. W. 151. The claimant urges that the evidence here is stronger for a recovery than it was in Lovell v. Beedle, 138 Minn. 12, 163 N. W. 778. We think not. The evidence as to facts and circumstances here is almost as unsatisfactory as in Johnson v. Kistler, 157 Minn. 217, 197 N. W. 671, 202 N. W. 904, where a recovery was set aside. However, we do not intend to discuss the evidence or lack thereof in view of the conclusion that there should be a new trial to the end that the jury may apply the requested instruction to the evidence.

The claimant urges that the answer admits a contract. We think that is not so. Because the answer alleges a contract between father and son under which the latter went into the home, it does not follow that there was also a contract between the father and the claimant, the son's wife, in regard to compensation for her work. On the contrary, the admission of a contract with the son would seem to be very persuasive that no contract was made with the son's wife. The services the two rendered could not very well be separated; at least it would be extremely difficult.

The amount of the verdict is assailed. In view of our conclusion that there should be a new trial, the excessiveness of the verdict need not be considered. Other errors assigned are not likely to arise upon another trial.

The order denying a new trial is reversed.

### ON APPLICATION FOR REARGUMENT.

On May 24, 1935, the following opinion was filed:

PER CURIAM.

Respondent requests a rehearing on the ground that certain statements in the decision of this court might be regarded as conclusive upon the subject in a retrial of the case. The decision states:

"But there was no purpose in receiving in evidence some diaries kept by the deceased, and the fact that certain others were destroyed by the husband of the claimant. No entry in those received purports to bear on any issue litigated."

The only complete diary for a year was the one for 1907, the year the alleged contract was made. A careful examination shows no entry as to a contract nor any entry from which either the existence or nonexistence of such contract could be inferred. As to the other four, the entries are only fragmentary and of a kind which do not permit inferences either in favor of or against a contract to pay plaintiff for services. But if at a future trial it is made to appear that any entry controverts testimony as to the whereabouts of the deceased at a particular time or his physical condition, it would then be for the trial court to determine its admissibility. At the trial had no effort was made either on cross-examination of defendant's witnesses or at the time the objection was made to the reception of the diaries to point to any entry therein relevant or material upon the issue litigated.

The matter covered by the second paragraph of the syllabus we deem adequately and correctly treated in the opinion so as to present no difficulty in a retrial of the case. Where the so-called admission against interest of a deceased person is not in respect to

the specific issue litigated, but rather indirectly or upon a collateral matter, evidence going to contradict or explain the same should not be excluded.

A rehearing is denied.

