# EDWARD W. BENEKE v. ESTATE OF SOPHIA M. BENEKE.[1]

November 29, 1912.

Nos. 17,804—(151).

**Parent and child — claim against estate of parent.**
Evidence upon an application by a son for the allowance of a claim against his deceased mother's estate for board, services, etc. (such services being held to have been rendered her while she was living with him as a member of his family) considered, and *held*, to sustain the trial court's finding that the estate was not liable for such claim.

**Presumption.**
The execution of a promissory note gives rise to a rebuttable presumption that the payee was not at the time of such transaction indebted to the maker.

From an order of the district court for Olmsted county, which denied his motion for a new trial and for an amendment of the findings, Snow, J., Edward W. Beneke appealed. Affirmed.

*Thomas Spillane* and *M. D. Halloran,* for appellant.

*Charles C. Willson* and *Henry O. Christensen,* for respondent.

PHILIP E. BROWN, J.

Sophia M. Beneke died testate in Olmsted county on November 24, 1910, aged eighty-three years. After the appointment and qualification of an executrix of her estate, her son, this appellant, filed a claim against the same amounting to the sum of $1,830, in the probate court, for the value of board, room, light, and washing, alleged to have been furnished the decedent by him while she was residing with him and his family, in his home, during nearly all of the last six years of her life, including therein also an item for the value of the board of a nurse for his mother, alleged to have been furnished

[1] Reported in 138 N. W. 689.

for her in his home during her last illness. The executrix interposed an answer denying the son's claims in toto and presented to the court by way of offset thereto the amount of the principal and interest of three promissory notes, the principal of which aggregated $1,160,. executed by the claimant to the deceased in her lifetime. The probate court, after a hearing, denied the son's claim and allowed the offset. The claimant appealed to the district court, where, a jury being waived, a trial was had to the court, and findings were filed affirming the action of the probate court. Thereafter the claimant moved for a new trial, and, as a part of his application, included therein a demand to the effect that, in the event of the denial of his motion, the court amend its findings in specified particulars, which demand would, if granted, necessarily have resulted in the allowance of the appellant's claim. The court denied this motion in all respects, and this is an appeal from its order in such regard.

The evidence adduced on the trial established and the court found, among other things, in effect, that the services specified in the claimant's demand were in fact furnished by him as claimed and were of the value stated. Furthermore it appears, and was found, that the claimant rendered all of these services while the deceased resided in his dwelling house as a member of his family under no express agreement on her part to pay therefor, and that she never definitely promised to pay him for the same. The court also found the evidentiary facts concerning the business and domestic relations of the deceased and the claimant at great length, and by its conclusions of law denied him any relief. Likewise, under the uncontroverted testimony the findings established the execution of the three notes interposed by the executrix by way of offset as above stated, and their nonpayment, all as claimed by the executrix.

The appellant makes no claim that there was any express agreement on the part of the deceased to pay for these services, but insists, substantially, that the trial court erred in finding that the deceased lived with the claimant as a member of his family, and also erred in refusing to find substantially as follows: "It appears from the evidence that there was a mutual understanding between said Sophia, and said Edward, that the services rendered, and the accom-

modations furnished were not to be rendered and furnished gratuitously, and that said Sophia expected and intended to pay for the same, and that said Edward expected to be paid therefor, and that said services rendered and the accommodations furnished to said Sophia by said Edward, were rendered and furnished under circumstances from which an obligation to pay for the same is justly inferred."

The case turns on the determination of the above stated contentions, other points covered by the assignments of error either having been waived by failure to argue them, or else being such as to require no comment. The appellant makes no real complaint concerning the facts found, but rests his objections on the deductions drawn by the court from the facts, and the questions thus presented are, whether the deceased was a member of the claimant's family at the time the services were rendered; and, if so, could the trial court reasonably infer from the proofs that pecuniary compensation was contemplated by the parties therefor at the time when the services were rendered.

The fair determination of these questions requires a recital of the salient features of the findings, all of which we hold to be supported by the evidence. Such in effect are that, after the death of the husband of the deceased in 1895, she, in settlement of certain matters growing out of his will, conveyed to the claimant all of her interest in the estate of her deceased husband, and the claimant, in turn, conveyed to her a life estate in eighty acres of land, the parties agreeing that the claimant should use the land during his mother's life and pay her therefor as rent the sum of $160 per year, payable annually, and $400 in addition thereto, and the claimant further covenanted that she should have the use of three rooms in the building situate on the eighty, and also be furnished by him with what was "necessary for her use which can be raised on the farm, viz.: flour, meat, potatoes, milk, eggs and vegetables, also the necessary fire-wood, cut and ready for the stove," during her lifetime. The claimant complied with his covenants and agreements literally, up to the time he left the farm, except that his mother accepted from him a note for $400, in lieu of the payment above mentioned. The parties lived

on the farm in the same house, until about nine years prior to the death of the mother, when she and the claimant and his family, consisting of his wife and children, moved to Rochester, where the mother thereafter lived with the son as a member of the family up to the time of her death. Until the last two years of her life, she participated in the work of the household, but then ceased because of a serious affliction which incapacitated her for labor and necessitated increased care, attention, and nursing on the part of the claimant and his family. With the exception of the special attention made necessary by her disease, however, she received no more rewards than he had agreed to furnish her on the farm. During the period she resided with him in Rochester she paid the bills of her physician, the major part of the compensation of her nurses, and a part of the wages of the house servants. She also paid for her clothing and articles for her personal use, and at one time contributed $100 towards the payment for a sewer connection for the son's residence, in order that her own conveniences would thereby be increased. During her lifetime, her son, the claimant, made no demand on her for payment for any of the services rendered, and continued to pay her the stipulated rent for the eighty-acre farm when it matured. She never paid him anything on account of services rendered. It also appeared that the claimant executed notes to her as follows: November 3, 1901, $160, payable on demand, with six per cent interest; November 1, 1906, $500, payable on demand, with five per cent interest; November 1, 1907, $500, payable on demand, with five per cent interest. No part of these notes has been paid, except that all of the interest accruing thereon was paid annually up to November, 1910. The claimant testified that he expected payment to be made for the items stated in his account. There was, also, evidence of declarations of the deceased made on several occasions during the last years of her life, but not to the claimant or in his presence, to the effect that she would pay the claimant for all that was done for her, and that she did not expect them, the family, to "do it" for nothing, and that claimant would get his pay for all done for her.

Such being the facts before us, we think that it is too clear for argument, that the deceased was a member of the claimant's family

during the period of the rendition of the services in question; and, such being the case, the only remaining question is whether the court ought to have amended the findings as requested. While the case of Einolf v. Thomson, 95 Minn. 230, 103 N. W. 1026, 104 N. W. 290, 547, is not precisely in point here, the rule there stated, supported, as it is, by Donahue v. Donahue, 53 Minn. 460, 55 N. W. 602, and Wetherill v. Canney, 62 Minn. 341, 346, 64 N. W. 818, governed the trial court in its consideration of this case, which rule is as follows:

"The general rule deducible from the authorities is that, where a child after arriving at majority continues to reside as a member of the family with a parent, or with one who stands in the relation of a parent * * * the presumption is that no payment is expected for services rendered or support furnished by the one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay, or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made," citing 21 Am. & Eng. Enc. (2d ed.) 1061. See also Hodge v. Hodge (Wash.) 11 L. R. A.(N.S.) 873 to 913, and Hardman's Admr. v. Crich (131 Ky. 358), 133 Am. St. 248, where the cases are collated, and in the notes to the latter case the rationale of the rule is discussed.

The appellant insists that it appears that the dealings of his mother and himself were "at arm's length, a mere matter of dollars and cents," and that both parties expected payment to be made for the services involved, and furthermore that any presumption to the contrary growing out of the relationship of parent and child was destroyed by the evidence of the facts and circumstances. But we do not consider the proofs sufficient to establish the appellant's contentions in this regard, nor to give rise to an implied contract between the members of a family to pay for services, which can be established only by evidence sufficient to warrant the deduction that payment was contemplated by both parties when the services were rendered. This conclusion is reinforced by a consideration of the facts recited as to the claimant's payment of the annual rents on the eighty-acre farm, and especially as to the execution by him of notes payable to

his mother for large sums, and his payment of annual interest thereon. Why should he pay rents and execute notes to her when she was indebted to him in large amounts? It seems to us that such actions are inconsistent with the claimant's theory that the parties should be considered as dealing at arm's length in the matter of the services rendered. True it is, that such facts are not conclusive against the claimant. His explanation of why he paid such interest, namely, because it was due to his mother, and because he figured that he had money enough in his possession to pay him what she owed him, that is, that he owed her enough money on his notes to nearly cover her indebtedness for his services, is not, however, convincing. Moreover, such conduct on the part of the claimant raised a presumption against him, for it is well established by the authorities that the execution of a note by one person to another gives rise to a presumption that the payee was not at the time of such transaction indebted to the maker. Barnes v. Green's Admr. 11 Ky. L. Rep. 422, 12 S. W. 277; McIntyre v. Meldrim, 63 Ga. 58; Downs v. Downs (Iowa) 102 N. W. 431; Fitzpatrick v. Phelan, 58 Wis. 251, 16 N. W. 606; Atchison v. Davidson, 2 Pinney, 48.

We have not overlooked the testimony of the several witnesses who testified to the deceased's declarations concerning her intention to pay for the services rendered by the claimant, or that he would be paid. Such declarations are, however, too ambiguous and equivocal to establish liability. Nor are they sufficient to rebut the presumption, above referred to, arising from the execution of notes by the claimant to the deceased and payments made by him to her. They might as well have referred to his expectancy as his mother's heir at law, as to anything else. It would be mere guess work to conclude therefrom that the deceased intended to pay for the services in question.

Finally, while the principle announced in Einolf v. Thomson, supra, must be applied here to the same extent as in the trial court, we are required to apply in connection therewith also the familiar rule of appellate procedure, which, stated most favorably for the appel-

lant, is that we cannot disturb the findings of the trial court if the evidence fairly tends to support them. This rule applied here necessarily requires an affirmance.

Order affirmed.