## WILLIAM M. KNIGHT v. CATHERINE MARTIN.[1]

January 2, 1914.

Nos. 18,268—(160).

**Members of family—liability for services or support.**

1. Where brothers and sisters live together as one family, the presump-

[1] Reported in 144 N. W. 941.

Note.—The authorities on the question of implication of agreement to pay for services rendered by relative or member of household are discussed in an extensive note in 11 L.R.A.(N.S.) 873.

tion is that no liability exists in favor of one or against another for services performed or support furnished.

**Presumption not conclusive.**

2. Such presumption may be overcome by proof of facts and circumstances from which it is reasonable to infer that both parties understood that compensation should be made for such services.

**Evidence.**

3. Evidence examined and *held* insufficient to overcome such presumption.

**Judgment notwithstanding verdict.**

4. Judgment notwithstanding the verdict can be granted only when a motion for a directed verdict was made at the trial, and a motion to dismiss an appeal from probate court is not equivalent to such motion.

In the probate court for Hennepin county Catherine Martin filed a claim against the estate of Cornelius Martin, deceased, for $2,700 for services during 9 years. William M. Knight, the administrator of the estate, filed objections to the claim, and it was disallowed. From the order of disallowance, claimant appealed to the district court for Hennepin county. The appeal was heard before Hale, J., who denied respondent's motion to dismiss the appeal, and a jury which returned a verdict in favor of claimant for $1,440. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, the administrator appealed. Reversed and new trial granted.

*Elmer W. Gray,* for appellant.

*J. L. Murphy* and *Thomas B. Kilbride,* for respondent.

TAYLOR, C.

The Martin family consisting of the father, mother and nine children, lived upon a farm of 96 acres near Robbinsdale in Hennepin county. About 1880 the mother died, and thereafter the daughter, Catherine, then about 15 years of age, assumed and performed the duties of housekeeper. As the children grew up they all left home excepting Catherine, her twin sister Helen, and her brother Cornelius. The father and these three remained upon the farm and continued to live together as one family until the death of the father

in 1902. Catherine at all times performed the duties of housekeeper, and, during the latter years of the father's lifetime, Cornelius took charge of and operated the farm. Prior to his death, the father conveyed to Cornelius 42 acres of the farm, including the farm buildings, and to Catherine and Helen the remaining 54 acres thereof. After the death of the father, Cornelius, Catherine and Helen continued to live together upon the farm as one family, the same as before, until the death of Cornelius eight years later. Catherine managed and conducted the household affairs, and Cornelius managed and operated the farm—that part of it belonging to his sisters, as well as that part of it belonging to himself—the same as they had done before the father's death. Helen was an invalid for some years and was cared for by Catherine and Cornelius. From the proceeds of the farm, Cornelius paid the taxes upon all the property, the household expenses, and the doctor and hospital bills for Helen. He supplied Helen's wants and gave her some money, but never gave Catherine any money nor purchased any clothing for her. Catherine, however, sold the chickens, eggs and butter, and had the money received therefor, and out of this purchased her own clothing.

The evidence indicates that these three considered and treated the property as belonging to them in common; and that Cornelius intended that so much of it as belonged to him should go to these two sisters when he should pass away, but he did nothing to put this intention into effect and died intestate. After his death Catherine filed a claim against his estate for services as housekeeper which was disallowed by the probate court. She appealed to the district court where the case was tried before a jury and a verdict rendered in her favor. Thereafter the administrator made an alternative motion for judgment notwithstanding the verdict or for a new trial, which was denied, and thereupon he appealed to this court.

Where brothers and sisters live together as one family, the presumption is that no liability exists in favor of one or against another for services performed or support furnished. Hodge v. Hodge, 11 L.R.A.(N.S.) 873, and the exhaustive note appended thereto [47 Wash. 196, 91 Pac. 764]; Baxter v. Gale, 74 Minn. 36, 76 N. W. 954; McCord v. Knowlton, 79 Minn. 299, 82 N. W. 589; Einolf

124 M.—13.

v. Thomson, 95 Minn. 230, 103 N. W. 1026, 104 N. W. 290, 547. "This presumption may, however, be overcome by proof of an express agreement to pay for such services, or of such facts and circumstances from which it reasonably may be inferred that it was understood and expected by both parties that pecuniary compensation should be made for the services." Begin v. Begin, 98 Minn. 122, 107 N. W. 149.

The question for determination is whether there is any evidence from which an agreement or understanding that Cornelius should compensate Catherine for her services may be inferred. The facts above mentioned are uncontroverted and in addition thereto the only evidence claimed to have any bearing upon the question is the following:

Catherine, asked by her counsel whether, when she was keeping house for Cornelius, she intended to do it for nothing, answered: "No sir. I always thought I would get something out of it." The witness Chapin testified that in response to a complaint by Catherine that she was receiving nothing for her labor, Cornelius replied: "I don't expect you are working for nothing; whatever is mine is yours;" and that Cornelius subsequently stated to witness that he would never see the girls want for anything as long as he had a dollar. The witness Sayre testified that Catherine asked Cornelius, at one time, if she might take a horse to drive to Robbinsdale, and that Cornelius replied "that she could have anything that she wanted, that whatever was his was hers, and whatever horse she wanted, to take;" and that in response to an inquiry by witness, at another time, as to why he did not buy more land, Cornelius replied "that he had stayed on the old homestead all his life and him and the girls were there, and that that was all that he felt like handling, and after he passed away that he wanted it to go to the girls and they could do with it to suit themselves."

The presumption cannot be overcome by such evidence as this. No inference that Cornelius understood or expected that he was to pay Catherine for her services can reasonably be drawn therefrom. It does not point toward any express or implied contract to that effect. To permit the presumption to be overborne by such vague

and casual remarks would result in its practical abrogation, for the cases would be exceedingly rare in which remarks indicating a common interest in the property and an intention to confer favors upon other members of the family could not be shown.

That it might have been fitting for Cornelius to have left his property to these two sisters, will not justify the court in allowing them a portion thereof through the medium of a claim for services, when no agreement to render compensation for such services has been established.

Judgment notwithstanding the verdict can be granted only when a motion for a directed verdict was made at the trial. Section 4362, R. L. 1905. Hemstad v. Hall, 64 Minn. 136, 66 N. W. 366; Netzer v. City of Crookston, 66 Minn. 355, 68 N. W. 1099; Sayer v. Harris Produce Co. 84 Minn. 216, 87 N. W. 617.

At the conclusion of the claimant's evidence the administrator made a motion to dismiss the appeal which was denied. He then rested without offering any evidence but made no further motion. The motion to dismiss the appeal was not equivalent to a motion for a directed verdict, and it follows that the refusal of the trial court to grant judgment notwithstanding the verdict was correct. But the motion for a new trial should have been granted upon the ground that the evidence was not sufficient to sustain the verdict.

Order denying a new trial reversed and a new trial granted.