IN THE MATTER OF THE ESTATE OF LOUIS KLESSIG,
DECEASED.
MINNA KLESSIG v. A. O. LEA, ADMINISTRATOR, ETC.[1]

July 21, 1922.

No. 22,814.

No agreement to compensate adult daughter for services at home.
    1. The evidence fails to establish either an express or implied agreement to compensate the services of a daughter for the time she remained in the father's home after reaching her majority.

No reversal where excluded testimony would not have changed result.
    2. The court rightly ordered judgment in favor of the estate, since the testimony claimed to have been erroneously excluded as well as that claimed to have been improperly received would not have changed the result.

To the claim of Minna Klessig against her father's estate, the administrator of the estate filed objections, which were sustained by the probate court for Waseca county, Senn, J. On appeal to the district court for Waseca county the case was tried before Childress, J., who when plaintiff rested denied defendant's motion to dismiss the matter, and a jury which returned a verdict for $2,000. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment and from that order, plaintiff appealed. Affirmed.

*Moonan & Moonan,* for appellant.
*A. W. Johnson,* for respondent.

HOLT, J.
The appeal is from a judgment dismissing a claim filed by appellant against her father's estate. The claim was disallowed by the probate court. On appeal to the district court a jury gave appellant

[1]Reported in 189 N. W. 424.

a verdict for $2,000, but, on respondent's motion for judgment notwithstanding the verdict or a new trial, judgment was ordered and entered in favor of the estate.

Louis Klessig, the father of appellant, was a farmer in the county of Waseca. His two oldest children were girls, the older of whom died when 22. Appellant, the younger, is now 42 years old. He also had four sons, the oldest of whom was 4 years younger than appellant. The farm at one time consisted of 320 acres. But there seems to have been only 160 acres left in 1915. The children had to assist in farm work as soon as able, their schooling being limited. The girls being the older naturally had to carry the heavier burdens as long as the boys were small. As each of the three older sons reached about the age of 22 he married and left the old home. Arthur, next the youngest, settled down on the farm, the father having in 1910 moved into the village of New Richland where he built a home. In 1915 the father conveyed the farm to Arthur. He paid only $500 for the one 80. The deed to the other 80 was left in escrow until part of the consideration of $4,500 was paid. Arthur gave a purchase money mortgage to his father on this for $2,500. This mortgage and a note of $500 given by Arthur and two shares of stock worth $100 constituted the only estate left by Louis Klessig. It appears that the town property was conveyed to the youngest son Roland. The oldest son has resided on the west coast since he left home. The second son died some years before the father, leaving a child now 9 years old who is with his mother in Michigan. Appellant learned dressmaking when 21, and sewed for others to some extent while living with her parents. Shortly after they moved to New Richland, she established herself in the dressmaking trade. The above may serve as an outline of the situation in which appellant and her father were during his lifetime.

In the verified claim filed in the probate court appellant stated that it was for ten years' labor performed in expectation of compensation in the way of a legacy pursuant to a promise of decedent that he would leave her an interest in an 80-acre tract of land worth $150 an acre. In the district court she filed a complaint, wherein she stated that she performed this labor for which her father prom-

ised to pay by devising or conveying property to her, and that for the purpose of carrying out this agreement he delivered deeds of real property to a third party to be delivered to appellant after the death of her father, but that this deed was without her consent taken away by her father from the third party.

The record is absolutely barren of any express agreement on the part of decedent to pay appellant for services, either in money or by way of devise or conveyance of real estate. It is true that she testified that she expected to be paid, but that is no proof of an agreement to pay on his part. No better is her statement that she knew provisions had been made for her without specifying when or from whom such knowledge was obtained. There is no fact or circumstance prior to 1912 that even suggests an inference of an intention to compensate appellant for her work while a member of her father's household.

Klessig was a German farmer living in a German community. It is common knowledge that among those people the women, in addition to doing the housework, labor in the fields, many of them doing more than a man's share there. The thrifty German farmer is not at all likely to bargain for his young daughter's services when he may have them for nothing. The decedent's joshing reference to appellant as his hired man, made to a neighbor was of no significance to the neighbor and should not be to a court or jury. The only fact of any importance is that appellant continued to perform hard work as a member of her father's family for ten years after attaining her majority. But the presumption arising therefrom is that the services were rendered gratuitously. Einolf v. Thomson, 95 Minn. 230, 103 N. W. 1026, 104 N. W. 290, 547; Begin v. Begin, 98 Minn. 122, 107 N. W. 149.

It is, however, not necessary to prove an express contract for compensation. The presumption that the services are gratuitously rendered by a child, so long as it remains in the parental home a partaker of its benefits and comforts, may be overcome by facts and circumstances from which an implied promise to compensate may be inferred. In this case there must not only be an inference of intention to pay, but also that payment could not be demanded until

after decedent's death, for otherwise the statute of limitations, pleaded as a defense, would be a bar, no service having been rendered within more than ten years prior to the making of the claim. To supply this proof, Mr. Spillane was called by appellant and testified that Louis Klessig and his wife came to his office when he was judge of probate in the spring of 1912, three years after appellant had left the home, and stated that they wished to make some provision for their crippled daughter (appellant has a deformed or impaired leg) by leaving her their village home; that after some discussion he drew a deed thereof to appellant which was executed and left with him, to be delivered to her after the death of the parents; that after the death of his wife, Louis Klessig came to the office of the witness and asked for the deed saying: "I believe I will take that because I am going to make different arrangements for Minna." He received the deed. Appellant never got it.

Does this execution of a deed indicate an intention to pay for services or to bestow a gift? It seems to us that the language used by Mr. Klessig clearly shows that it was a desire to bestow a bounty on a child whose misfortune appealed to the parents' sympathy, and not to discharge a contract obligation to her. But even if not so, the deed incident cannot help appellant. If it was executed and delivered to Judge Spillane to be delivered to appellant at the grantors' death in payment for services rendered, the title passed under the rule of Dickson v. Miller, 124 Minn. 346, 145 N. W. 112, and no claim for services can remain against the estate. The return of the deed after a delivery would not devest the grantee's title. Again, if there was no delivery of the deed and what was done proves a plan of the Klessigs to compensate, then the evidence discloses that another plan was adopted in that appellant accepted cash in lieu of the property described in the deed. Appellant admits that she got $2,700 from her father and it also appears that the property mentioned was conveyed to the youngest son. It is true that appellant testified that the money mentioned was not in payment of her services, but there is no denial that the same was not a substitute for the deed transaction.

We are of opinion that the making of this deed and what occurred in connection therewith is altogether of too uncertain and ambiguous a character to be allowed as a fact or circumstance from which a jury might infer an implied agreement to pay appellant for services rendered long prior thereto. What was said in Beneke v. Estate of Beneke, 119 Minn. 441, 138 N. W. 689, Ann. Cas. 1914B, 381, about evidence of such uncertain bearing holds true here. Appellant's case seems more attenuated than in Knight v. Martin, 124 Minn. 191, 144 N. W. 941, where this court held it insufficient to sustain a verdict. And in Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696, it is said [Syllabus]: "The courts are strict in scrutinizing and weighing the evidence offered to establish such a contract, and it must be clear, satisfactory and convincing"—that is, a contract—such as appellant pleaded, one to make a will or deed. There being an utter absence of any evidence of an express agreement, the facts here relied on, namely, the long continued hard service and the signing of the deed do not satisfactorily show an intention on the part of both appellant and her father that there be compensation, so as to spell out an implied agreement within such of our decisions as Lansing v. Gregory, 128 Minn. 496, 151 N. W. 277; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015; and Lovell v. Beedle, 138 Minn. 12, 163 N. W. 778. Authorities cited by appellant from other jurisdictions do not state a rule more favorable to her than is announced in the decisions of this court above referred to.

Appellant invokes the rule that judgment non obstante veredicto should not be granted, unless it clearly appears that no cause of action exists against a defendant in whose favor judgment is ordered. Daily v. St. Anthony Falls Water Power Co. 129 Minn. 432, 152 N. W. 840, and cases therein cited. We think judgment was rightly ordered, unless evidence erroneously received or excluded could bring about a different result.

Appellant was permitted to testify that she expected compensation, but was not allowed to answer this question: "Miss Klessig, when did you expect to get your pay and what did you expect to get for the work you did?" It is not perceived that her secret ex-

pectations as to time or kind of compensation would add · anything of substance to her case. If her expectations were based on what had been said by her father, she could not get in evidence conversations with him in this indirect manner. ·

The following testimony was received erroneously it is claimed. A neighbor to Mr. Klessig testified that, after the death of Mrs. Klessig, Mr. Klessig told him that "Minna thought she could do better to have the cash than to wait for the property," so he transferred the property in town to Roland and gave her the cash, $3,500. Another witness testified that Mr. Klessig told him "he took the place back from Minna and settled it  *  *  *  home place in town, settled up with Minna, was square with everybody, he had everything settled, so the lawyers wouldn't wash their hands in his money after he was dead." A third neighbor was permitted to testify to the same thing. Grant it was error to receive this testifony of self-serving declarations, we cannot think it influenced the court in ordering judgment. Appellant conceded she got $3,200, but claimed $500 thereof was a repayment of money loaned her father. Confessedly the $2,700 was a gift or else a reward for services. Some substantial and direct evidence should be adduced to establish that, when Minna received this large sum from her father, these services rendered long prior thereto were still considered by him an outstanding obligation against him.

The judgment is affirmed.