## IN RE ESTATE OF JENNIE ANDERSON.
## NELLIE PEPPER, APPELLANT.[1]

April 30, 1937.

No. 31,180.

*Eriksson & Eriksson,* for appellant.
*R. J. Stromme* and *William M. Goetzinger,* for respondent.

HILTON, JUSTICE.

This is an appeal from the order of the district court, Grant county, denying a motion to set aside a directed verdict and grant a new trial. The case arose on an appeal to district court from an order of the probate court disallowing the claim of Nellie Pepper (hereinafter referred to as appellant) against the estate of her mother, Jennie Anderson.

[1]Reported in 273 N. W. 89.

Charley Anderson died in 1908 leaving a farm of approximately 157 acres in Grant county. Surviving him were his wife, Jennie Anderson, and six children, five boys and one girl, the latter being the appellant herein. One of the boys died shortly after the death of the father. Upon the probate of the father's estate, Jennie Anderson received a life estate in the homestead of 80 acres. The remaining 77 acres and the personal property were decreed, one-third to Jennie, undivided and in common with the remaining two-thirds, which went to the children share and share alike. The mother continued to operate the farm "as boss," receiving the whole-hearted coöperation of the children to whatever extent they were able to assist. As a result of these combined efforts, a $3,000 mortgage against the farm, existing at the death of Anderson, was paid off, and a new home was built thereon, the son William, who was a carpenter, doing much of the work and contributing $800 toward materials and labor. The balance of the cost was paid from the earnings of the farm.

William worked out as a carpenter after the two younger sons were old enough to assist in the farm work, but he stayed at the farm until his marriage in 1926. The son Allan was home until 1922, at which time he left, and has since made his home elsewhere. The other two sons, Herman and Carl, were at home and have worked the farm continually since the death of their father.

Appellant stayed at home until 1916, when she left to study and take up the millinery trade. For the first year or two she returned at frequent intervals for various lengths of time, but went to Minneapolis in January, 1918, to work at the millinery trade, apparently intending to make her own home and living. Two months later, after receiving a letter from her mother, she returned to the farm, two of the boys having been drafted for the war, and she has remained there ever since, with the exception of a few brief absences. In 1926 she married Jurgen Pepper, who has lived on the farm with her since that time. Much of the time Pepper has not engaged in work outside the farm but has confined his efforts to assisting in the work there.

In 1925 the mother's health began to fail, and asthma developed and continued, in varying degrees of severity, up to the time of her death in 1933. Prior to 1925, appellant had assisted in the usual work of housekeeping and the chores. After her mother's health began to fail appellant's duties were gradually increased. She took care of practically the entire housework and in addition cared for her mother.

Appellant filed a claim against the estate of her mother for $2,579.64, the alleged value of her services rendered since 1925. The claim was disallowed, and an appeal taken to the district court for a trial before a jury. At the close of appellant's case the trial court granted a motion for a directed verdict against appellant.

The two main points relied upon by appellant are (1) that the trial court erred in refusing to permit appellant to testify to the contents of the letter written by her mother to her in 1918, and (2) that the court erred in directing a verdict for the respondent. Additional facts will be found hereinafter as these points are discussed in order.

Appellant testified that she read the letter once when she received it, put it away with some other papers, and that it was destroyed by her sometime in 1930. It was sought to introduce her testimony as to part of the contents of the letter, and upon respondent's objection the trial court ruled that the evidence was not admissible. The basis upon which the ruling was made does not seem clear. Counsel for appellant offered to prove that the letter contained the following language: "Two of the boys are going to war and we have a lot to do. I wish you would come home and help me." We conclude that no error was committed in excluding this evidence. It is necessary to amplify appellant's position somewhat in order fully to understand the question involved.

It is claimed that in 1918 appellant had left the parental home and set out to make her own way in life and take up an independent vocation, establishing a home of her own apart from that of her mother; that she returned home at the request of her mother to perform services for her; and that therefore the presumption that

services rendered by a child to the parent in the home are gratuitous does not apply. Counsel cites authority to support this contention and claims that the part of the letter offered would tend to prove the request to return home and render services and thus aid in establishing circumstances to show that the presumption did not apply here. He also contends that even if it be held that the presumption of gratuity did apply as to the services in question, the evidence of the contents of the letter was admissible because, in that event, the presumption could only be overcome by proof of an actual contract to pay for the services, and the evidence in question would tend to prove that contract, or at least an element thereof, *viz.*, the request to render the services. We are unable to agree with either of these claims.

No attempt was made to connect the alleged request in the letter with the services for which compensation is here sought, even remotely. As we read it, the request was to return home and render services, as the boys were going to war and appellant's help was needed. The boys came back home a few months after appellant's return and remained there, and it appears that she stayed voluntarily for the next seven years before she began to render services for which she claims a right to recover. There is nothing to indicate that any effort or inducement was made to keep appellant at home—nothing to show that she was not at liberty to leave again and resume her independent vocation if she chose to do so. The request can hardly be considered a request to perform services beginning at such a remote time as seven years in the future, there being nothing to show that the request originally made in the letter was extended at any later time, actually or impliedly, to include such services. There is no evidence from which we can conclude that the request as stated in the offer of proof in any way induced the rendition of the services. The verified statement and proof of claim of appellant filed in the probate court states that the understanding or agreement to pay for the services in question was made in May, 1925, and we fail to see any connection between that understanding and the request made seven years prior thereto.

It follows that there was no error in excluding the testimony as to the contents of the letter. It was irrelevant and had no rational probative value as far as any of the issues in this case are concerned, and it is of course axiomatic that such evidence is not admissible. 1 Wigmore, Evidence (2 ed.) p. 148, § 9. It would tend to prove neither circumstances to prevent the presumption of gratuity from applying in this case nor any element of a contract to pay for the services in question. What we have said makes it unnecessary to consider whether 2 Mason Minn. St. 1927, § 9817, which prevents the giving of evidence of conversations with, or admissions of, a deceased person, by any person who is a party to the action or interested in the event thereof, would apply to oral testimony as to the contents of the destroyed letter, and whether the evidence in question was an admission or conversation with a deceased person within the meaning of that statute.

Since it appears that appellant was a member of her mother's household when she began to render the services in question, it is presumed that such services were gratuitous. Counsel concedes the existence of the presumption. See Neutgens v. Rehmann, 170 Minn. 499, 212 N. W. 943, and cases there cited. His only claim in this respect was that the presumption did not apply in this case for the reasons hereinbefore stated, which contention has already been disposed of. This brings us to the second assignment of error, viz., did the court err in directing a verdict against appellant?

To overcome the presumption of gratuity, it was not necessary to prove an express contract for compensation. However, it was incumbent upon appellant to show facts and circumstances from which an implied promise to compensate might be inferred. In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; In re Estate of Johnson, 170 Minn. 451, 212 N. W. 815. There having been a directed verdict against appellant, we will take the evidence in the view most favorable to her.

Appellant testified that she rendered the services under an expectation that she would receive compensation therefor, and we accept that as a fact on this appeal. Of course it is still necessary

to prove that the mother understood that the services were not gratuitous and that she agreed or expected to pay for them. The question thus arises as to whether the evidence tending to prove this is strong enough so that we could permit a verdict for the appellant to stand. If it is, there must be a reversal. Bayerkohler v. Clara City Farmers Elev. Co. 189 Minn. 22, 248 N. W. 294.

It appears that appellant had received money from her mother on several occasions since 1925, amounting in all to about $285. It is claimed that this evidence tends to show an acknowledgment of indebtedness on the part of the mother and an intention to pay for the services. Aside from the fact that the payments were made, there is no evidence to show this. There is no evidence to show for what purpose the payments were made or whether they were made voluntarily or on request. We must consider the fact that the daughter and her husband were living with the mother, and the natural tendency of a parent to be generous toward a child at home, especially when, as in this case, the child is caring for the parent during an illness. Surely a strong feeling of gratitude must exist in such a case, and we feel that, in the absence of any evidence to the contrary, these payments must have been made out of such a sense of gratitude and a feeling of generosity, and not as an acknowledgment of indebtedness and an intention to pay for the services.

In 1932 appellant and her mother were in Fergus Falls for about five weeks to secure treatment for the latter. They stayed at the home of friends, a Mr. and Mrs. Gamble. The Gambles testified that during this time the mother made a statement to the effect that Nellie (appellant) would get what was coming to her. This single statement is so ambiguous, even when considered with the fact of the aforementioned payments, that it cannot be held to show an intention that appellant was to receive compensation for her services. It could just as well be taken to refer to the expectation of the mother that appellant would receive her proportionate share of her estate. The following language used in the opinion in In re Estate of Klessig, 153 Minn. 27, 31, 189 N. W. 424, 426, is particularly applicable here:

"We are of the opinion that the making of this deed and what occurred in connection therewith is altogether of too uncertain and ambiguous a character to be allowed as a fact or circumstance from which a jury might infer an implied agreement to pay appellant for services rendered long prior thereto. What was said in Beneke v. Estate of Beneke, 119 Minn. 441, 138 N. W. 689, Ann. Cas. 1914B, 381, about evidence of such uncertain bearing holds true here."

Attention may also be called to the opinion in Knight v. Martin, 124 Minn. 191, 194, 144 N. W. 941, 942, wherein it is stated:

"The presumption cannot be overcome by such evidence as this. No inference that Cornelius understood or expected that he was to pay Catherine for her services can reasonably be drawn therefrom. It does not point toward any express or implied contract to that effect. To permit the presumption to be overborne by such vague and casual remarks would result in its practical abrogation, for the cases would be exceedingly rare in which remarks indicating a common interest in the property and an intention to confer favors upon other members of the family could not be shown."

We hold that an intention to pay on the mother's part cannot be found in this one remark, even considering the fact that the payments were made.

On two occasions after her marriage appellant and her husband attempted to leave the farm and establish a place of their own, but were dissuaded by the mother. These events occurred after appellant had started to render the services. Except for the fact itself that appellant and her husband were persuaded to remain, there is nothing to show that there was any intent, expressed or otherwise, on the part of the mother to pay for services thereafter rendered, which intention may have induced appellant and her husband to abandon their plan to leave. At least on one of the occasions their decision to leave was impelled by a misunderstanding between appellant and her mother, which was later straightened out, and they remained, apparently on the same basis that existed

before. In the absence of any showing of such intention or induce-ment, no agreement to pay for such services thereafter can be found from such circumstances.

Much of the evidence goes to the value of the services and their nature, but we need give no special consideration to that. That they were valuable and burdensome cannot be denied, and appel-lant is to be commended for her patience and efforts during these trying years. However, we must conclude that the evidence is too ambiguous and uncertain to overcome the presumption that the services were gratuitous. A verdict for the appellant could not be sustained, and the court was right in directing a verdict against her.

Counsel for appellant cite the following cases: Lovell v. Beedle, 138 Minn. 12, 163 N. W. 778; Wagner v. Seaberg, 138 Minn. 37, 163 N. W. 975; Larson v. Larson, 161 Minn. 289, 201 N. W. 420; In re Estate of Havenmaier, 163 Minn. 218, 203 N. W. 958; In re Estate of Johnson, 170 Minn. 451, 212 N. W. 815. We have ex-amined them carefully and conclude that each of them presented a much stronger case to support a finding of an agreement or con-tract to pay for the services involved than does the evidence in the case now before us. The only possible exception to this statement is the case last above cited, and in that case the presumption of gratuity was held not to apply and the court concluded that the evidence was sufficient to justify a finding that there was an agree-ment to pay. What that evidence was does not appear. See Knight v. Martin, 124 Minn. 191, 144 N. W. 941; In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; In re Estate of Anderson, 157 Minn. 217, 197 N. W. 671, 202 N. W. 904.

Affirmed.