IN RE ESTATE OF DORATHEA SICKMANN.
THEODORE SICKMANN v. MINNIE MATHWIG.[1]

January 26, 1940.

No. 32,285.

O. S. Vesta and Philip L. Scherer, for appellant.
Streissguth & Gislason, for respondent.

LORING, JUSTICE.

This action arose out of a claim filed by Theodore Sickmann against the estate of his mother, Dorathea Sickmann. The claim was disallowed by the probate court. At the close of the evidence in the district court on appeal, respondent's motion for a directed verdict was granted. Claimant comes here on an appeal from an order denying his motion for a new trial. His claim is based on the value of improvements made by him on one of his mother's farms. He operated the farm as a partner with his mother during the years 1920 to 1922 and as her tenant there-

[1]Reported in 289 N. W. 832.

after till her death in December, 1937. As partner and as tenant, he made substantial improvements on the farm, with the admitted expectation of having it devised to him. The farm was so devised, subject however to a lien in the amount of the difference between the value of the farm and one-fifth of the total value of the estate, which amount was, according to the will of his mother, to be paid by him into her estate to insure an equal distribution of her property among her five children. Two brothers of the claimant were devised other farms subject also to similar liens. Theodore brings suit for $4,632.42 on the theory of an express or an implied contract to reimburse him for the value of the improvements.

1. During the years of the mother-son partnership, an electrification system was installed on the farm, each partner paying half the price. The claim herein includes the cost of the half which claimant then paid as partner. While claimant operated the farm as his mother's tenant, the chief improvements made pursuant to the alleged contract include stanchions installed in the barn, a permanent water tank, cement flooring in some of the buildings, a new silo, the remodelling of the farm home, and the painting of various farm buildings.

In support of his contention that there was a contract for reimbursement, claimant introduced the testimony of three witnesses. His wife testified that her mother-in-law had said that "she would make it right to them some day," that "she would make that right with the estate." One Ray Lang, who had been a hired man for a period of a little more than a year in 1930 and 1931, testified that the elder Mrs. Sickmann had told him that she was "paying for everything out of the estate." Lang's testimony, as taken in the probate court, indicates that Theodore, shortly before the hearing, reminded him of what she had said. The man who installed the electric lights testified that Mrs. Sickmann, Sr. said she planned to pay for the whole cost out of her estate. In this connection it is to be borne in mind that a statement of intention is not a promise upon which can be predicated

a contract. In Carlson v. Krantz, 172 Minn. 242, 246, 214 N. W. 928, 929, 54 A. L. R. 545, the court expressed the idea as follows:

"Again in such a case, it is easy for an interested party, in retrospect, to give to a mere expression of intention a promissory and contractual effect."

Again on page 247 of the same case, the court advises "that care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action."

Against this there is the admission by claimant that when he made the improvements he expected to receive the farm upon his mother's death. That he kept no records of his expenditures during all these years is persuasive evidence that he was not in fact relying upon any contract for reimbursement. Annotation, 54 A. L. R. 548, at p. 551. See also Wallace v. Higgins Land Co. 136 Minn. 278, 161 N. W. 597. He did keep records, with scrupulous care, of his rent payments and of items which should be credited to him upon the rent. But it was not until he read and became dissatisfied with the will that he began collecting data and receipts to show his expenditures on these improvements. This fact indicates that the idea of contract was an afterthought. Under circumstances like these, "there can be no recovery for services performed for the benefit of another if the idea of charging for them was an afterthought." Evans v. Henry, 66 Ill. App. 144, Annotation, 54 A. L. R. 548, at p. 551; Spadoni v. Giacomazzi, 27 Cal. App. 149, 151, 149 P. 51, 52; Fisk v. Ellis, 133 Okl. 43, 46, 271 P. 158, 160. The idea of making improvements was, admittedly, born in the mind of Theodore. At most, the mother merely acquiesced. When the farm was electrified, Theodore and his mother were operating the farm as partners. Theodore's books show that he considered it a partnership undertaking; under the heading, "electric light," he has the following: "Our half is $537.94. In all $1,074.88." Upon dissolution of the partnership in 1922, mother and son divided the partnership property equally between them, apparently in settlement of all claims each might

have against the other. In 1922 Mrs. Sickmann moved to town; she did not again make her home on the farm. Her only interest in it was as lessor. When the silo was built she was out of the state on a trip. Upon such a record we could not sustain a finding of contract between mother and son. Everything plaintiff did he did in the expectation of one day owning the farm, and the idea of making improvements originated with him with that in mind.

Further, negating the contention that there was a contract is the family conference held in 1934. Because of the financial depression, claimant and two other son-tenants had fallen behind in their rent payments to their mother. She thereupon called in all her children, and agreements were made between her, the claimant, and her other two sons reducing their respective rental rates. Claimant was at that time credited with materials and labor furnished by him for the farm: posts, wiring, fixing windmill, etc. Less these amounts, his rent past due totalled more than $500, for which he gave his promissory note, which he later paid. In In re Estate of Anderson, 157 Minn. 217, 197 N. W. 671, 672, 202 N. W. 904, the plaintiff, who was a son-in-law of the decedent was suing her estate for the reasonable value of her care and maintenance. He had prior thereto executed his note to her for money he had borrowed. The court there said [157 Minn. 220]:

"It is universally recognized that the execution of a promissory note creates a presumption that the payee is not indebted to the maker, and this presumption is especially strong where the note is given for borrowed money with no suggestion that a liability of any kind exists against the lender. Beneke v. Beneke, 119 Minn. 441, 138 N. W. 689, Ann. Cas. 1914B, 381, and note appended to report of this case in Ann. Cas. [1914B] 384."

See also In re Estate of Delva, 195 Minn. 192, 262 N. W. 209, where in a suit by a son against his father's estate it was held that evidence that plaintiff gave his note for money borrowed was admissible as showing a condition of affairs inconsistent with a debt owing by his father to him.

Another matter taken up at this 1934 family conference was the payment by Mrs. Sickmann of half the price of the electrification. The other children expressed the feeling that they should be given something too. Accordingly, the other three sons were given automobiles. The daughter had been given $500 upon her marriage. This transaction negatives the claimant's theory of a contract between Theodore and his mother as far as the item of electrification is concerned. The giving of the note and its subsequent payment indicates a settlement of whatever claims there may have been. This conclusion is supported by credible evidence, not specifically denied, that Mrs. Sickmann asked the children whether they had any further claims to settle, which question was answered in the negative by all the children, including Theodore. Subsequent to that time no substantial improvements were made by claimant.

We think the trial court properly directed a verdict for the defendant, because the evidence would not sustain a verdict to the contrary.

2. Evidence offered to prove how profitably Theodore had operated the farm for his mother from 1917 to 1920 was properly excluded. It had no bearing on the alleged contract. There was no prejudicial error in the exclusion of the evidence offered to the effect that claimant had not kept records of his expenditures upon the improvements because he had learned that the stores where he purchased the materials kept records. It could have had no probative value. Evidence concerning testatrix' other farms was immaterial, and there was no error in its exclusion. All other assignments of error have been considered and found to be without merit.

Order affirmed.

PETERSON, JUSTICE (concurring specially).

It seems to me that plaintiff's failure to keep a record of his expenditures is not important in view of the circumstances of this case. Otherwise I concur.