[1] Reported in 6 N.W.2d 98.
Anna M. Docken filed a claim in the probate court seeking its allowance there. It consists of two parts. One is for small items "purchased for Edward Hirt, Sr." amounting to "$29.88." The second part is for claimed —
 "Services rendered for the deceased for ten years before his death ................... $7,300.00 --------- "Total ................................. $7,329.88
 "Less $200 paid by deceased ................ 200.00 --------- "Total ................................. $7,129.88" *Page 211 
The probate court allowed the first portion, $29.88, but disallowed the balance. Claimant appealed to the district court, where she met the same fate, the court dismissing her cause when she rested, on the ground that she had failed to make a prime facie case. Her motion for new trial on the ground that the court's dismissal "is not justified by the evidence" and "is contrary to law" was denied, and she appeals.
Claimant, who was decedent's sister-in-law, went into his home in 1901, where she remained for a period of nearly 40 years, during which time she was treated and considered as a member of the family. She was quite a capable seamstress and for more than 22 years worked in that field, earning about $1.75 per day. During these years and while so engaged, she paid but $1.50 per week for her room and board at the Hirt home. In addition, she rendered aid to and for her sister, principally as a seamstress, as one would consider appropriate in most any household under similar circumstances. From 1923 on, her sister's health was not as robust as theretofore, and from then until 1932, when Mrs. Hirt suffered a stroke, she gave more of her time and attention to the household. During this period she paid nothing for her board and room. "After I stopped paying board, then my board was paid for by what I did." In December 1934 Mrs. Hirt died. As a consequence, claimant's services were called into greater prominence. But from 1923 on, the children, who had grown up and gone about their own affairs in life, no longer lived in the Hirt household. After Mrs. Hirt's death, claimant continued to live in the Hirt home until Mr. Hirt died suddenly on January 1, 1941. He was a man of wide business experience, keen and mentally alert, and actively engaged in his business affairs up to the moment of his death. He paid all his bills promptly.
That these people lived harmoniously together as a family is shown beyond question. Each member was trusted and treated by the other members as one of the family unit. As such, they enjoyed the use, occupancy, and convenience of the entire Hirt home, eating at a common table. In the use of the family car, *Page 212 
claimant, along with the rest, went riding whenever they wished her to go. And, as was only natural, claimant from time to time discussed business affairs with Mr. Hirt.
When Mrs. Hirt died she left an estate which was duly probated. Claimant made no claim against this estate, nor did she so much as suggest payment of any portion of the claim she now seeks to enforce against Mr. Hirt's estate. During all these years she never suggested to Mr. Hirt or to anyone else that he owed her anything or that she expected compensation. In 1936 we find that Mr. Hirt had drawn his will. He showed it to claimant, who testified that she was not interested in the disposition of his property and made no comment or inquiry as to whether provision had been made for her under it. In 1937 she procured $200 from Mr. Hirt, which she promised to repay. During this period she acquired a $2,300 mortgage from him, paying the full amount thereof. These matters all took place after Mrs. Hirt's death. At no time and in no manner was any suggestion made that she ought to receive something in the way of compensation for services she was then and theretofore had been rendering. She was 73 years old at the time of trial, so she must have been at least 63 years of age in 1932, from which time she claims compensation.
In this situation and with these facts before it, the probate court in its memorandum disallowing the service claim expressed the view that, absent express contract, the facts and circumstances failed to show that when the services were rendered claimant expected to receive payment and that there was nothing connected therewith to indicate that Mr. Hirt had ever expected to make any payment. Therefore, the court concluded:
" 'Claims first asserted after the death of an alleged debtor should require some substantial proof before being allowed.' We have here a large claim asserted for the first time after the death of the person sought to be charged for services rendered over a long period of time during the life of the alleged debtor without the suggestion as to why it was not paid during the decedent's life, if valid. Inability of claimant to produce some definite, affirmative *Page 213 
evidence going to show the existence of either an express or an implied agreement is fatal to her claim."
On appeal, the district court, upon granting the motion to dismiss, employed substantially the same language as that of the probate judge and adopted his line of reasoning. So the problem presented here, if a problem at all, is whether the conclusion reached below finds support in our decisions.
1. Under the provisions of Minn. St. 1941, § 546.39(3) (Mason St. 1927, § 9322[3]), the court is authorized to dismiss a case if the plaintiff "fails to substantiate or establish his cause of action or right to recover." Of course, under our decisions, he "must be given the benefit of every reasonable inference that might be drawn from the evidence." 6 Dunnell, Dig. § 9754. We shall therefore approach the case with this rule in mind.
2. The quotation contained in the probate judge's memorandum, taken from In re Estate of Wood, 167 Minn. 417, 420,209 N.W. 1, 2, that "large claims first asserted after the death of an alleged debtor should require some substantial proof before being allowed," is as potent a factor here as it was in the case there under consideration. Many cases have come before this court involving this question. Reviewing them, we think the statement found in 6 Dunnell, Dig. Supp. § 10375, correctly states the rule here to be applied:
"Where relatives live together as members of the same household, it is presumed that no pecuniary compensation is expected or will be paid for services rendered or support furnished by one member to another, and this presumption applies where a parent lives in the family of a son-in-law or a daughter-in-law, or a child in the family of a father-in-law or mother-in-law. To overcome this presumption it must appearthat when the services were performed, or the support was furnished, both parties understood that compensation was to bemade therefor." (Italics supplied.)
A citation of the many cases to which note 75 refers is not deemed necessary, since these are all available to the bench and *Page 214 
bar. But there are some to which particular attention should be called: Beneke v. Beneke, 119 Minn. 441, 138 N.W. 689, Ann. Cas. 1914B, 381; Knight v. Martin, 124 Minn. 191,144 N.W. 941; In re Estate of Klessig, 153 Minn. 27, 189 N.W. 424; In re Estate of Anderson, 199 Minn. 588, 273 N.W. 89.
3. Since there is no proof of an express contract and since the inferences to be drawn from the facts and circumstances otherwise appearing in the record are obviously so uncertain and ambiguous as to afford no basis upon which a verdict for claimant could be sustained, an affirmance of the order below necessarily follows.
Affirmed.