**In re ESTATE OF Sarah Edith BEECHAM, a.k.a. Edith Beecham, Deceased.**

**No. CX–84–550.**

Court of Appeals of Minnesota.

Jan. 15, 1985.

Review Granted March 29, 1985.

Edward F. Kautzer, St. Paul, for appellant.

Raebern B. Hitchcock, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a $32,000 order for judgment against the estate of Sarah Edith Beecham for personal services she received from claimant. An order for judgment is not an appealable order pursuant to Minn. R.Civ.App.P. 103.03. In the interests of judicial economy, we grant discretionary review and reverse.

## FACTS

Sarah Edith Beecham died January 13, 1983, at the age of 91. Her husband died on November 18, 1976 at the age of 89. At the time of their deaths they lived at the home of their only child, Raymond, and his wife, Alice.

Raymond, 70, and Alice Beecham, 60, were married in 1974. Before this time Alice did not know the elder Beechams. Both Raymond and Alice had adult children from a previous marriage. Two years after they married, Raymond's parents moved in with them because they could no longer live alone.

Raymond's father died within seven months of moving to Raymond's house. His mother lived there 6–½ years before she died. During this time she voluntarily gave Raymond a check averaging $600 per month. These checks were deposited into a joint checking account and used for general household expenses. The elder Beecham also shared the cost of building a new bathroom for the house with Raymond and Alice.

Alice attended to all of Sarah's personal needs including preparing her meals, doing her laundry and ironing, cleaning her room, doing her hair, taking her on errands, cleaning up after her due to her incontinent situation, and being with her 24 hours a day.

The only evidence to establish an express agreement to pay for services rendered was the deposition testimony of Alice which is not before the court. Although Alice testified in her deposition that her husband informed his mother that her monthly rent payments did not cover Alice's services, and that she overheard her mother-in-law tell her son that he would get $100,000.00 when she died, this deposition was not admitted at trial and Alice did not testify to these matters at trial.

Sarah's will left $1,500 to Raymond, nothing to Alice, and the remainder of her estate to her four grandchildren, Raymond's children from his first marriage.

These grandchildren never physically cared for their grandmother or offered to pay for her care. They visited her four or five times a year, usually on holidays. All agreed that Sarah's person and surroundings were clean and that meals were very good.

Five months after Sarah died, Alice presented a claim against the estate for $44,400 for her personal care services. Catherine Moore, a 40-year-old granddaughter and personal representative of Sarah's estate, disallowed the claim because "the proceeds of grandmother's estate should go to my brothers and me."

The trial court found that Alice was entitled to reimbursement for her services, and ordered that the estate pay her $32,000.00.

Appellants appeal raising the following issues.

## ISSUES

1. Did the trial court err in finding that the personal services rendered to Sarah were not gratuitous?

2. Did the trial court err in finding that claimant received no part of the $600 monthly payment made to respondent by decedent?

## ANALYSIS

1. *In re Anderson's Estate,* 157 Minn. 217, 219, 197 N.W. 671, 672 (1923) held,

Where relatives live together as members of the same household, it is presumed that no pecuniary compensation is expected or will be paid for services rendered or support furnished by one member to another; and this presumption ap-

plies where a parent lives in the family of a son-in-law or daughter-in-law, or a child in the family of a father-in-law or mother-in-law.

To overcome this presumption the *Anderson* court held that it must appear that when the services were performed, or the support was furnished, both parties understood that compensation was to be made therefor. *Id.*, 157 Minn. at 219, 197 N.W. at 672.

Mrs. Anderson lived in the home of her daughter and son-in-law for more than nine years, requiring almost total nursing services for much of that time. The daughter testified that her mother promised to "make it right with me because I had her living with me."

The trial court indicated that because Mrs. Anderson was not dependent upon her relatives for support and because of the son-in-law's economic status when she moved in, she should not have imposed upon the son-in-law the burden of supporting her without compensation. However, the court concluded that Mrs. Anderson was under no legal obligation to pay for such support *because the evidence did not show that the son-in-law furnished the support with the intention of charging for it, and that Mrs. Anderson accepted it with the understanding that she was to pay for it. Id.*, 157 Minn. at 219, 197 N.W. at 673, citing *Knight v. Martin*, 124 Minn. 191, 144 N.W. 941 (1914) and cases cited therein. (Emphasis added.)

In *In Re the Estate of Tilghman*, 240 Minn. 494, 61 N.W.2d 743 (Minn.1953), the supreme court reversed a trial court judgment dismissing the claim of a daughter for three years of intensive nursing care furnished a father she had not lived with or been cared for by for 50 years, since she was 16 months old, on the basis solely of kinship. The supreme court stated the following two general rules:

The rule generally stated (absent the family relation) that, where one renders services for another which are known and accepted by the other, the law implies a promise to pay therefor. Where,

however, the party served is a member of the family of the person serving, a presumption arises that such services are gratuitous.

The presumption of gratuity is dependent on the existence of a family relation and only arises when it is shown that the members of a family usually and ordinarily render to each other by reason of the family relation. The authorities stress the fact that the presence of those reciprocal duties within the family is essential to the creation of this presumption.

*Tilghman*, 240 Minn. at 496, 61 N.W.2d at 745.

■ Here, respondents make much of the fact that no presumption of gratuity can arise because (1) no family relation existed since Alice had only known decedent two years before taking her into her home and caring for her, and (2) because of Sarah Edith Beecham's advanced age she was unable to reciprocate in performing duties and obligations inherent in a family relation.

Although *Tilghman* emphasizes that 50 years was a long time for a father to ignore his daughter, no case, including *Tilghman*, has ever held that time alone is dispositive as to whether a family relation exists. Obviously this varies from case to case.

Here, we have a 60-year-old bride and her 70-year-old groom who, two years after their marriage, take the ailing in-laws to live with them. Both the bride and groom are of an age where they are well aware of health limitations and the need many of us have in advanced years for physical care. In addition, there is the natural desire of a bride and groom of any age to show respect and affection for one's in-laws.

The record does not reflect the hardship and deprivation as articulated by Alice's attorney in her affidavit in support of her application for compensation from the estate for physical care furnished her in-laws. Rather, it shows that Alice welcomed the in-laws into her home and cared for them as a natural and family-type thing to do.

In determining whether the presumption of gratuity exists, no case clearly defines reciprocity except to differentiate it from pecuniary.

The presumption of gratuity finds its foundation in the reciprocal character of family duties and services, and where the services and duties between members of a family are so disproportionate as not to be in any true sense reciprocal, the presumption of gratuity does not apply and the one who has borne the greater burden may be entitled to recover compensation.

*Tilghman*, 240 Minn. at 496, 61 N.W.2d at 745–46.

Here, Sarah was able to discuss books she read and what went on in her environment; she was company for the younger Beechams. The 90-year-old woman did not scrub floors or do housework, but companionship, affection and respect are reciprocal rights and duties in a family.

She was not bedridden, nor was she in the lamentably severe physical distress of the beneficiaries in either *Anderson* or *Tilghman*. The burden borne by Alice was not as great as that borne by the claimants in those cases.

We hold that under these circumstances where a family relation exists, the family members exchanged reciprocal services, and there was no express agreement to pay money for the performance of such services, there is a presumption of gratuity within the purview of *Tilghman*.

This presumption is not, however, conclusive, and may be overcome by proof, either of an express agreement to pay, or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made.

*Tilghman*, 240 Minn. at 497, 61 N.W.2d at 746 (citing *Beneke v. Beneke*, 119 Minn. 441, 445, 138 N.W. 689, 691 (1912).

Here, there is no express agreement to pay any money over and above the $600 monthly amount which was actually paid. The trial court erred in its finding No. 5 which provides:

During her years at the 1921 Juliet Avenue address Edith Beecham gave to her son, Raymond, a monthly check at first amounting to $400 a month, then it was increased to $600 a month, and for the last months of her life the sum of $700 a month. Except for an occasional five or ten-dollar tip for expenses for transportation, the claimant, Alice Ann Beecham received nothing from Edith Beecham.

Alice testified that their household expenses increased by $600 to $700 per month because of Sarah. Alice produced some documentary evidence to show the food budget doubled when the elder Beechams came to live with them, but was totally unable to explain any other increases. It is incredible that Alice did not benefit from the $600 per month which was added to pay general household expenses, or that all of it would be consumed by this 90-year-old woman.

Sarah always indicated her desire to pay her own way. She paid one-half the cost of a second bathroom. She increased her monthly payments over the years. When Alice was asked at trial whether she had ever told the elder Beecham that the amount she was paying was not sufficient to cover her room and board and Alice's services, Alice said she had not discussed it with her.

The trial court, in its Conclusion of Law No. 4 held:

there is no proof that the services rendered by Alice Ann Beecham were gratuitous or were paid for by the sums paid to her husband, Raymond Beecham. Alice Ann Beecham merits compensation for her services and that compensation has not been paid.

This conclusion misreads *Tilghman* and is error. Alice does not have to prove that the services she provided were gratuitous. As discussed above, once the family relation is found as we have found here, the presumption arises that the services are gratuitous and respondents have the burden to prove either that no family relation existed, or prove an express agreement to pay, or such facts and circumstances as

show satisfactorily that the parties mutually expected payment to be made.

On the basis of this record, respondents have not met their burden of proof.

Although respondents refer to certain testimony taken in a discovery deposition of Alice Beecham, specifically testimony that Sarah told her son that she would leave him $100,000, this testimony was not repeated at trial and the discovery deposition is not in evidence. Therefore, that statement is not of record and will not be considered by this court in any proceedings.

## DECISION

The decision of the trial court is reversed.